# Richmond.

## CONNELL'S EX'ORS v. CHESAPEAKE & OHIO RY. CO., AND PULLMAN PALACE CAR CO.

### APRIL 9, 1896.

1. PLEADING—*Demurrer to Declaration—Leave to Amend—Demurrer to Amended Declaration.*—Where a demurrer to a declaration is sustained, with leave to the plaintiff to amend, if the plaintiff exercises that privilege, he cannot afterwards be heard to object to the judgment on the original declaration.

2. RAILROADS—*Common Carriers of Passengers — Negligence — Proximate Cause.*—Railroads engaged as common carriers of passengers, though not insurers, are liable for the slightest negligence on the part of themselves or their servants which human care, skill, and foresight could have foreseen and provided against, and upon proof of injury resulting from the acts of the agents or employees of the company, or defects of coaches, machinery, roadbed or other appliances connected with the transportation of passengers, the passenger has a *prima facie* case for the recovery of damages; but the negligence complained of must be the direct and efficient cause of the injury inflicted.

3. NEGLIGENCE—*Proximate Cause.*—Negligence is the proximate cause of an injury when the injury is the natural and probable consequence of the negligence complained of, and the result is such as ought to have been foreseen under the circumstances in the particular case.

4. COMMON CARRIERS OF PASSENGERS—*Liability—Probable Dangers—Sleeping Car Company—Assassination of Passenger by Stranger.*—The liability of common carriers of passengers does not flow directly from the injuries sustained, but from their duty to convey their passengers in comfort and safety. They are responsible for injuries if it appears that they knew, or ought to have known, that danger existed, or was reasonably to be apprehended, and did not use proper means to avert it. But a sleeping car company is not liable for the death of one of its passengers, at the hands of an assassin, in the nighttime, who enters its car by stealth, while traveling through a peaceable, law-abiding country. This is not a natural or probable danger, nor one to be anticipated, against which the company is expected to guard and protect its passengers.

Error to a judgment of the Circuit Court of the city of Richmond, rendered November 4, 1893, in an action of trespass on the case, wherein the plaintiffs in error were the plaintiffs, and the defendants in error were the defendants.

*Affirmed.*

The defendants demurred to the declaration of the plaintiffs and the demurrer was sustained, but liberty was granted the plaintiff to amend.   They amended their declaration, to which the defendants again demurred, and the demurrer was sustained, to which judgment this writ of error was awarded.   The following is a copy of the amended declaration:

" In the Circuit Court of the city of Richmond:

" E. H. Ball, Geo. W. Connell, Wm. A. Connell and John W. Overturf, executors of the last will and testament of D. F. Connell, deceased, plaintiffs, complain of the Chesapeake and Ohio Railway Company, a corporation duly chartered, and the Pullman Palace Car Company, a corporation duly chartered, who have been duly summoned to answer a plea of trespass on the case, for this, that the said defendant, the Chesapeake and Ohio Railway Company, before and at the time of committing the grievances hereinafter mentioned, were the owners and proprietors of the Chesapeake and Ohio Railway, and of certain cars, coaches and locomotives, owned or leased or operated by them for the carriage and conveyance of passengers, upon and along said railway from a certain place, to-wit, Clifton Forge, to divers other places, and among such other places to Waynesboro and Basic City, both in the State of Virginia, upon said railway, for hire and reward paid to them the defendants; and the said defendant, the Pullman Palace Car Company, before and at the time of committing the grievances hereinafter mentioned, were the owners and proprietors of a certain car or coach

making a part of the train of, and running upon the tracks of the Chesapeake and Ohio Railway from a certain place, to-wit, Clifton Forge to divers other places, and among such other places, Waynesboro and Basic City, which said car was used and operated by the defendants as a sleeping or lodging car for the lodging of travelers for a specific reward or compensation to be paid the defendants by such travelers as should use the same being first-class passengers on said railway. That heretofore, to-wit, on the 1st day of August, 1891, in the State of Virginia, at the request of the defendants, the said D. F. Connell, became and was a passenger in the said sleeping or lodging coach or car, owned or leased, or operated by the defendants as aforesaid, to be by them safely and securely carried and conveyed thereby in a certain journey along and upon said railway, for a certain reasonable reward or compensation, paid or rendered to the defendants therefor by the said D. F. Connell, as such passenger as aforesaid, and that thereupon it became and was the duty of the said defendants to use due and proper care that the said D. F. Connell should be safely and securely carried and conveyed by, upon, and along said railway as aforesaid, and both his person and his property protected from violence, injury, or loss, while a passenger as aforesaid; but that the said defendants did not use due and proper care in that behalf, and by their negligence, carelessness, and default in failing to keep a proper and necessary watch or guard, and otherwise, at some point on said railway, distant from Basic City, permitted some person, unknown to the plaintiffs, armed with a deadly weapon, to enter the said Pullman or sleeping-car for the purpose of robbery or murder, and through their negligence and carelessness, and their failure to keep a proper watch or guard, the said person was improperly and negligently permitted to remain on the said sleeping car, and at a point on said railway between Waynesboro and Basic City, to go to the berth of the said D. F.

Connell, and demand his money, and upon being refused, to shoot him in the abdomen or stomach, with a ball fired then and there, from a gun or pistol, without any attempt being made by the defendants, or its servants or agents to protect the said D. F. Connell, inflicting thereby a deadly wound, hurt, and injury, from the result of and in direct consequence of which said wound and injury inflicted as aforesaid, the said D. F. Connell afterwards, to-wit, on the 4th day of August, 1891, died. By means of which said premises in pursuance of the provisions of the Code of Virginia, in such cases made and provided, a right of action hath accrued to the said plaintiffs, who have since the death of the said D. F. Connell, duly qualified as the executors of his estate, to demand and recover from the said defendants damages for the wrongs and injuries done and inflicted as aforesaid, to-wit, damages to the amount of ten thousand dollars.

"2d Count. And for this, also, that the said defendant, the Chesapeake and Ohio Railway Company, before and at the same time of committing the grievances hereinafter mentioned, were the owners and proprietors of the Chesapeake and Ohio Railway, and of certain cars, coaches, and locomotives, owned, or leased, or operated by them, and used and run by them for the carriage and conveyance of passengers, upon and along said railway from a certain place, to-wit, Clifton Forge, to divers other places, and among such other places, to Waynesboro and Basic City, both in the State of Virginia, upon said railway, for hire and reward paid them, the defendants, and the said defendant, the Pullman Palace Car Company, before and at the time of committing the grievances hereinafter mentioned, were the owners and proprietors of a certain car or coach making a part of the train of and running upon the tracks of the Chesapeake and Ohio Railway from a certain place, to-wit, Clifton Forge to divers other places, and among such other places Waynesboro and

Basic City, which said car was used and operated by the defendants as a sleeping or lodging car for the lodging of travelers, for a specific reward or compensation to be paid the defendants by such travelers as should use the same, being first-class passengers on said railway.

"That heretofore, to-wit, On the 1st day of August, 1891, in the State of Virginia, at the request of the defendants, the said D. F. Connell became and was a passenger in the said sleeping, or lodging car, or coach, owned, or leased, or operated, by the defendants as aforesaid, to be by them safely and securely carried and conveyed thereby in a certain journey along and upon said railway, for a certain reasonable reward or compensation, paid or rendered to the said defendants therefor by the said D. F. Connell as such passenger as aforesaid, and that thereupon it became and was the duty of the said defendants to use due and proper care that said D. F. Connell should be safely and securely carried and conveyed by, upon and along said railway as aforesaid, and that out of extra precaution, and for the purpose of obtaining greater security and protection, the said D. F. Connell became a passenger on the sleeping or lodging car, owned, or leased, or operated, by the defendants, for the use of which said car or coach, and for greater security and protection as aforesaid, the said D. F. Connell paid the said defendants, or the officer or agent they left in charge of the said sleeping or lodging car, leased or run as aforesaid by the said defendants, extra compensation and reward, and that thereupon it became and was the duty of said defendants to use due and proper care that the said D. F. Connell should be protected while in said car from violence and injury, and should be safely and securely carried and conveyed in the said car by, upon and along said railway as aforesaid, and both his person and his property protected from violence, injury or loss while a passenger as aforesaid; but that the defendants did not use due and proper care in that behalf, but after the

said D. F. Connell had retired to the bed or berth in the said car provided for him by the said defendants, and had used due and proper care on his part in securing and protecting himself, the said defendants, wholly neglecting and disregarding their duty, did not use due and proper care in that behalf, and that by their negligence, carelessness, and default in failing to keep a proper and necessary watch or guard, and otherwise, at some point on said railway, distant from Basic City, permitted some person unknown to the plaintiffs, armed with a deadly weapon, to enter the said Pullman or sleeping car for the purpose of robbery or murder, and through their negligence and carelessness and their failure to keep a proper watch or guard, the said person was improperly and negligently permitted to remain on said sleeping car, and at a point on said railway between Waynesboro and Basic City, to go to the berth of said D. F. Connell and demand his money, and upon being refused, to shoot him in the abdomen or stomach, with a ball fired then and there, from a gun or pistol, without any attempt being made by the defendants, or their servants or agents, to protect the said D. F. Connell, inflicting thereby a deadly wound, hurt, and injury, from the result of and in direct consequence of which said wound and injury, inflicted as aforesaid, the said D. F. Connell, afterwards, to-wit, on the 4th day of August, 1891, died.   By means of which said premises, in pursuance of the provisions of the Code of Virginia in such cases made and provided, a right of action hath accrued to the said plaintiffs, who have, since the death of the said D. F. Connell, duly qualified as the executors of his estate, to demand and recover from the said defendants damages for wrongs and injuries done and inflicted as aforesaid, to-wit, damages to the amount of ten thousand dollars.

" 3d Count. [Here regard and read as if here re-written out all that part of second count from the first word down to and including the words " at a point on said railway between

Waynesboro and Basic City."]    To go to the bed or berth
where the said D. F. Connell was sleeping.    [Here regard
and read as if here re-written out all that part of second
count from and including the words, " and demand his
money, and upon being refused, to shoot him in the abdomen
or stomach," down to and including the last word of the
second count.]

"4th Count.    [Here regard and read as if here re-written
out all that part of second count from the first word thereof
down to and including the words, " did not use due and
proper care in that behalf,"] and did not exercise proper
care and vigilance in selecting proper agents and servants
in the business of running said car, and in attending to the
comfort and safety of the passengers thereon, particularly
the said D. F. Connell, and in duly and reasonably guarding
the said D. F. Connell, while a passenger on said coach or
car, against violence, from any person on said coach or car.
[Here regard and read as if here re-written out all that part
of second count from and including the words, " but after
the said D. F. Connell had retired," down to and including
the last word of second count.]

"5th Count.    And for this, also, that the said defendants,
the Chesapeake and Ohio Railway Company, before and at
the time of committing the grievances hereinafter men-
tioned, were the owners and proprietors of the Chesapeake
and Ohio Railway, and of certain cars, coaches, and locomo-
tives owned, and leased, or operated, by them and used
and run by them for the carriage and conveyance of pas-
sengers, upon and along said railway from a certain place,
to-wit, Clifton Forge to divers other places, and among
such other places Waynesboro and Basic City, both in the
State of Virginia, upon said railway, for hire and reward
paid to them, the defendants, and the said defendant, the
Pullman Palace Car Company, before and at the time of
committing the grievances hereinafter mentioned, were

owners and proprietors of a certain car or coach making a
part of the train of and running upon the tracks of the
Chesapeake and Ohio Railway from a certain place, to-wit,
Clifton Forge to divers other places, and among such other
places Waynesboro and Basic City, which said car was used
and operated by the defendants as a sleeping or lodging car
for the lodging of travelers for a specific reward or compen-
sation to be paid the defendants by such travelers as should
use the same, being first-class passengers on said railway.
That heretofore, to-wit, on the 1st day of August, 1891, in
the State of Virginia, at the request of the defendants, the
said D. F. Connell being then and there a first-class passen-
ger on the Chesapeake and Ohio Railway, was received by the
defendants as a guest or lodger upon and in said sleeping or
lodging car, for a certain reasonable reward or compensa-
tion, then and there paid to the said defendants therefor by
the said D. F. Connell as such lodger or guest, and that
thereupon it became and was the duty of the said defendants
so undertaking to provide lodging for travelers to use due
and proper care, by reasonable watch and otherwise, to pro-
tect the said D. F. Connell while a lodger and an occupant
of a sleeping berth in the said car from violence and injury,
but that the defendants did not use due and proper care in
that behalf, and that after they had received the said D. F.
Connell, as aforesaid, in the said car and had furnished him
with lodging, and while so lodged in the place provided by
the defendants, as aforesaid, the defendants and their ser-
vants so carelessly and negligently conducted and behaved
themselves in not keeping proper care and watch so as to
reasonably protect him from violence from any person on or
in said sleeping or lodging car, and in being otherwise care-
less and negligent, that by and through their negligence,
carelessness, and default, in that behalf, after the said D. F.
Connell had retired to the bed or berth in the said car pro-
vided for him by the said defendants, and had used due

and proper care on his part in securing and protecting himself, by the negligence, carelessness, and default of the said defendants, the car or coach in which the said D. F. Connell was then riding or being conveyed, was so improperly and negligently guarded and without proper watch, and the lives and safety of the passengers therein, and particularly the said D. F. Connell, were so negligently and carelessly looked after, that at some point on the said railway distant from Basic City, they permitted some person, unknown to the plaintiffs, armed with a deadly weapon, to enter the said Pullman or sleeping car for the purpose of robbery or murder, and through their negligence and carelessness and their failure to keep a proper watch or guard, the said person was improperly and negligently permitted to remain on the said sleeping car, and at a point on the said railway between Basic City and Waynesboro, to go to the berth of the said D. F. Connell and demand his money, and upon being refused, to shoot him in the abdomen or stomach, with a ball fired then and there from a gun or pistol, without any attempt being made by the defendants or their servants to protect the said D. F. Connell, inflicting thereby a deadly wound, hurt and injury, from the result of, and in direct consequence of which said wound, hurt, and injury inflicted as aforesaid, the said D. F. Connell afterwards, to-wit, on the 4th day of August, 1891, died. By means of which said premises and in pursuance of the provisions of the Code of Virginia in such cases made and provided, a right of action hath accrued to the said plaintiffs, who have, since the death of the said D. F. Connell, duly qualified as the executors of his estate, to demand and recover from the said defendants, damages for the wrongs and injuries done and inflicted as aforesaid, to-wit, damages to the amount of ten thousand dollars.

And therefore they bring this suit.

*Cabell & Cabell*, for the plaintiffs in error.

*Henry T. Wickham, Henry Taylor, Jr.*, and *Tazewell Ellett*, for the defendants in error.

Keith, P., delivered the opinion of the court.

The executors of D. F. Connell, in an action of trespass on the case brought in the Circuit Court of the city of Richmond, complain of the Chesapeake & Ohio Railway Company and the Pullman Palace Car Company, defendants, and set out the following cause of action:

That on the 1st of August, 1891, their testator was a passenger upon a sleeping car owned by the Pullman Palace Car Company, which was attached to and made a part of the train running upon the tracks of Chesapeake and Ohio Railway Company, and that it became the duty of the defendants to use due and proper care that he should be safely and securely carried on said railway, as aforesaid, and protected from violence and injury while on the train; that the defendants did not use due and proper care in that behalf, but by their negligence, carelessness, and default, at or near Waynesboro, or between Waynesboro and Basic City, on the line of said railway, some person to the plaintiffs unknown, armed with a deadly weapon, was allowed by the defendants to enter the car or coach, owned or controlled and run by the defendants, in which plaintiffs' testator was then riding, with the intent to rob or murder him, and who did, without default on his part, shoot him in the abdomen, with a ball fired then and there from a gun or pistol, without any attempt being made by the defendants, or their servants or agents, to protect him; inflicting thereby a deadly wound, hurt, and injury, and that as the result and direct consequence of the wound and injury thus inflicted their testator died on the 4th of August, 1891.

The second count alleges that being a passenger on the Chesapeake and Ohio Railway Company their testator, out of extra precaution and for the purpose of obtaining greater security and protection, took passage on the sleeping car or lodging coach owned or leased by the defendants, and lost his life as substantially as described in the first count.

The third count avers that he was shot while asleep in his bed or berth.

The fourth count charges negligence upon the part of the defendants in failing to perform their duty reasonably to guard and protect the plaintiffs' testator, while a passenger, against violence from any person on said coach or car; and the fifth count avers that while occupying a berth in the sleeping car the defendants and their servants carelessly and negligently conducted and behaved themselves in not keeping proper care and watch so as to reasonably protect plaintiffs' testator from violence from any person on or in said sleeping car, and that by and through their negligence, carelessness, and default, some person unknown to the plaintiffs, armed with a deadly weapon, was allowed to go to the berth in which their testator was sleeping, with the intent to rob or murder him, and inflicted the wound before described.

To this declaration, and to each one of its five counts, which, while varying somewhat as to the mode of stating the plaintiffs' case, present substantially the same question of law, the defendants filed their demurrer. The Circuit Court sustained the demurrer and permitted the plaintiffs to amend their declaration, and an amended declaration was accordingly filed. To this declaration, and to each count thereof, the defendants also demurred, and the court sustained this demurrer; and thereupon the plaintiffs applied to one of the judges of this court for a writ of error, which was allowed.

The first ground of error assigned here is to the action of

the court in sustaining the demurrer to the original declaration. This position cannot be maintained, this court having held that where a demurrer is sustained with leave to amend, if the plaintiffs exercise that privilege, they cannot afterwards be heard to object to the judgment upon the original declaration. See *Hopkins Bro. & Co.* v. *Richardson,* 9 Gratt. at page 487; *Darracot* v. *C. & O. Ry. Co.* 83 Va. 288.

The demurrer to the amended declaration presents a question of novelty and interest, which, it is believed, has seldom arisen, and which certainly has never been passed upon by this court.

Railways engaged as carriers of passengers, while not insurers against all injuries except by the act of God or of public enemies, as are the carriers of goods, are yet bound to carry safely those whom they take into their coaches in so far as human care and foresight can provide; that is to say, are bound to use the utmost care and diligence of very cautious persons; and they will be held liable for the slightest negligence which human care, skill, and foresight could have foreseen and guarded against. See *Farish & Co.* v. *Reigle,* 11 Gratt. 697. A passenger who sustains an injury growing out of the act of the carrier's servants or agents, or because of any defect in machinery, coaches, roadway or other appliance connected with its transportation of passengers, is presumed, until the contrary is shown, to have been injured through the negligence of the carrier; and upon proof of the injury he has a *prima facie* case which, in the absence of proof to the contrary, entitles him to recover damages for the wrong.

The injury here, however, is not the result of any defect in the instrumentalities used by the defendants. The negligence averred is in the failure to observe such care and to take such precautions as would effectually protect a passenger, asleep in the night time, upon a Pullman coach constituting a part of the train of the Chesapeake and Ohio Railway

Company from an assault made upon him by some unknown person, a passenger or intruder, as the declaration alleges, who was permitted to enter the Pullman car with intent to commit murder or robbery, and who did inflict upon the plaintiffs' testator injuries from which he died. It is not averred that the defendants or their employees knew that any danger impended over the testator of the plaintiffs in error, or that there was any circumstance to arouse their suspicion, however watchful and alert they may have been.

Counsel for the plaintiffs in error have brought to the attention of the court a number of adjudged cases, which, upon investigation, turn out to be suits brought to recover damages for the loss of property upon sleeping cars by robbery or larceny. These cases establish a very high degree of duty from sleeping car companies to their patrons, and language is used which would go far to sustain the contention of the plaintiffs in error, were the facts under investigation in those cases at all similar to those under consideration here.

In the case of *Carpenter* v. *New York, &c. R. R. Co.* 124 N. Y. 53, the court says: "A traveler who pays for a berth is invited, and has a right, to sleep, and both parties to the contract know that he is to become powerless to defend his property from thieves or his person from insult, and the company is bound to use a degree of care commensurate with the danger to which the passengers are exposed." And again, in the same case, it is said: "They are bound to have an employee charged with the duty of carefully and continually watching the interior of the car while berths are occupied by sleeping passengers."

In that case a passenger was robbed while asleep, and the court held that the company had been negligent in failing to keep a continual watch upon the interior of the car, and was liable.

There is a strong array of cases of a like character, but

as all of them deal with the liability of carriers for the property of passengers which had been lost or stolen, an extended discussion of them would be unprofitable.

On the part of the defendants, it is claimed, among other grounds of defence, that no responsibility for a wrong attaches wherever there intervenes the independent act of a third person between defendant's negligence and the injury sustained, which affects and is the immediate cause of the injury.

This proposition is, without doubt, sustained by a convincing weight of authority, but we do not think it applies to this case, because the very negligence alleged consists in permitting the intrusion into the car of the third person whose independent act was the immediate cause of the injury. It will be necessary, therefore, to enquire what, upon principle, should be deemed the measure of duty which the defendants owed to the injured person in this case, and what degree of negligence in the performance of that duty will render them responsible for the injury sustained.

Under no circumstances is a carrier of passengers for hire held as an insurer of their safety, though the highest degree of care and diligence in guarding their safety is required, and the slightest imputation of negligence against which human care and skill can provide will make them responsible for any defect in machinery, or for any negligence on the part of their servants; but the negligence complained of must stand as the proximate cause of the injury sustained; that is, it must be the direct and efficient cause of the injury.

As was said by Justice Miller in *Scheffer* v. *R. R. Co.*, 105 U. S. 249: "To warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the

attending circumstances." In this quotation is to be found the principle upon which this case should be decided—a principle which goes far to reconcile the seeming conflict between the authorities cited on behalf of the plaintiffs and the defendants in error.

The cases relied on by the plaintiffs in error are actions to recover the value of goods which passengers have lost while occupying berths upon sleeping cars. Robbery is of frequent occurrence and larceny yet more frequent, and to invite a passenger to enter a sleeping car with his property and to go to sleep in the confidence that his person and property will be shielded and protected by those who have undertaken that duty, imposes a very high degree of watchfulness and care upon the sleeping car company. Passengers are invited to enter and to sleep; they are thereby disarmed and incapacitated for self-protection; carriers are paid to preserve watch and ward over their sleeping guests, and they are rightfully held to a due and faithful discharge of the obligations thus assumed. Experience teaches us that when property is exposed to theft it is apt to be stolen, but murder is of infrequent occurrence. When, therefore, a sleeping car company receives a passenger, and he retires to rest, it may well be assumed to anticipate and be required to guard and protect him against a crime which is likely to occur whenever the temptation and the opportunity are presented. It cannot be deemed to have anticipated nor be expected to guard and protect him against a crime so horrid, and happily so rare, as that of murder. There is no causal connection between the negligence pleaded and the injury sustained.

In a peaceful community, in a law-abiding and Christian land, a car of the defendant company is invaded in the night time by an assassin, and an innocent man falls a victim to his murderous assault. Can it be said that, in leaving a door ajar, in permitting a stranger or passenger to enter,

the defendants were guilty of negligence, when to hold them negligent would be to say that they should have expected the tragedy which gave rise to this action?   To do so, would be to require of them more than human foresight as to the minds and motives of men, and make them indeed insurers of the safety of passengers, while under their care, against all dangers, however remotely connected with their acts of omission or commission.   This view does not seem to have prevailed in those cases in which injuries to the persons and not to the property of passengers have been the subject of investigation.

In the case of *Putnam* v. *Broadway, &c. R. R. Co.* 55 New York, 108, the subject is very fully considered, and the court says: "The conductor is only called upon to act upon improprieties or offences witnessed or made known to him; and the company can only be charged for the neglect of some duty arising from circumstances of which the conductor was cognizant, or of which in the discharge of his duties he ought to have been cognizant.   The law only looks to the proximate cause of an injury in holding a wrong-doer liable to an action; and, if the damage is not the probable consequence of a wrongful act, it is not the proximate cause, so as to make the wrong-doer liable.

In *McGraw* v. *Stone,* 53 Penn. St. 436, the rule is declared to be that " a man is answerable for the consequences of a fault, which are natural and probable; but if the fault happens to concur with something extraordinary and not likely to be foreseen, he will not be answerable."

In the case of *Pittsburg, Fort Wayne & Chicago R. R. Co.* v. *Hinds,* 53 Penn. St. 512, one of the leading cases upon this subject, it is said: "There is no such privity between a railroad company and a passenger as to make it liable for that passenger's injury to another upon the principle of *respondeat superior.*   The only ground on which the company can be charged is a violation of the contract made

with the injured party. The company undertook to carry the plaintiff safely, and so negligently performed this contract that she was injured. This is the ground of her action— it can rest upon no other."

In that case a riotous crowd rushed upon the cars in such numbers as to defy the power of the conductor to resist them. They commenced to fight in the car in which the plaintiff was injured. Three causes of error were assigned. First, "the evidence shows that the conductor did not do his duty, by allowing improper persons to get on the cars; secondly, he allowed more persons than were proper, under the circumstances, to get on the train and remain upon it; third, he did not do what he could and ought to have done to put a stop to the fight upon the train, which resulted in the plaintiff's injury."

In discussing these errors the court said that it had been left to the jury to "determine whether the disorderly character of the men who came upon the train had fallen under the conductor's observation so as to induce a reasonable man to apprehend danger to the safety of the passengers." The plain meaning of this is, that the liability depended upon the fact that the disorderly character of the men who were permitted to enter the train had come under the conductor's observation, and was such as to induce a reasonable man to apprehend danger to the safety of the passengers. The liability was made to rest upon the express or implied notice to the conductor of the dangerous character of those entering the train.

In the case of *New Orleans, &c. R. R. Co.* v. *Burke*, 53 Miss. 200, four or five persons were co-passengers with the plaintiff on a special train. They were riding together in the baggage car and rudely deprived the plaintiff of his hat. The plaintiff sent to the conductor and informed him of the injury. The conductor asked them to return the hat. They became insulting and a fight ensued in which the plaintiff

was shot.   He sued and recovered damages; the court hold-
ing that it is the duty of the conductor of a passenger train
to preserve order, to protect passengers from insult and in-
jury from their fellow-passengers; and, if necessary, to the
discharge of this duty, he should stop the train and sum-
mon to his aid his fellow-employees, and such passengers as
might be willing to assist, and eject the disorderly persons
from the train.   Failure to discharge this duty as far as he
has the means and power, renders the railroad company
liable in damages to the injured or insulted passenger.   In
the course of its opinion the court says: "The liability of
the carrier arises not from the fact that the passenger has
been injured, but from the failure of the officials to afford
protection.   It will be necessary, therefore, to bring home to
the conductor (or other agent or officer of the company)
knowledge or opportunity to know that the injury was
threatened, and to show that by his prompt intervention he
could have prevented or mitigated it."

In the case of *Britton* v. *Atlanta & Charlotte Air Line R. R.
Co.* 88 N. C. 536, it is held that it is the duty of the com-
pany to protect every passenger from the violence and
assault of his fellow-passengers or of intruders, and that it
will be held responsible for its own or its servants' negligence
in the premises when the same might have been foreseen
and prevented by the exercise of proper care.   The liability
of the defendant to the plaintiff grows not out of the fact
that she was injured, but out of the failure of its servants to
afford protection after they had reasonable grounds for
believing that violence to her was imminent.

In the case of *Batton and Wife* v. *South & North Ala. R. R.
Co.*, 77 Ala. 591, it was held that, while it is the duty of a
railroad company, as a common carrier, to protect its pas-
sengers against violence or disorderly conduct on the part
of its own agents, or other passengers, and strangers, when
such violence or misconduct may be reasonably expected and

prevented, yet it is not liable to an action for damages for a wrong when it is not shown that the company had notice of any facts which justified the expectation that a wrong would be committed; and the court in its opinion says: "All the cases upon the subject impose the qualification that the wrong or injury done passengers by strangers must have been of such a character, and perpetrated under such circumstances, as that it might reasonably have been anticipated, or naturally expected to occur."

These cases seem to stand upon a safe middle ground between the English cases, which declare that a passenger is only entitled to protection at the hands of the carrier and its servants against such injuries as might reasonably be considered as within the contemplation of the parties at the time the ticket was purchased which is the evidence of the contract of carriage (see *Pounder* v. *N. E. Ry. Co.*, 1 Q. B. D. L. R.., at p. 390), and the cases relied upon by the plaintiffs in error in which the liability of sleeping car companies as to the property of passengers is enforced, and in which there are expressions which seem to support the contention as to liability for injuries to their persons. As we have seen, the responsibility of the carrier does not flow directly from the injuries sustained, but rests upon the principle that it is the duty of railroad and sleeping car companies to convey their passengers and guests in comfort and safety; and while not directly responsible to a passenger for a wrong inflicted by an intruder, or stranger, or fellow-passenger, they are responsible for such injury if it appear that the companies knew, or ought to have known, that danger existed or was reasonably to be apprehended, and that they could, by the use of the agencies at their disposal, have prevented the mischief. It is better that the carrier should be held responsible to a passenger for injuries received at the hands of an intruder, a stranger, or a fellow-passenger only in those cases where its agents or employees knew, or, in the light of surround-

ing circumstances, ought to have known, that danger was threatened, or to be apprehended, and then failed to use their authority and power to protect him from the impending peril, than that the hitherto recognized limits of responsibility for negligent acts should be enlarged and the carrier be held to answer for a casualty wholly unforeseen and of which this declaration contains the only recorded instance.

In this case, notice to the company or its agents is not charged, and no circumstance is alleged which could have put the company or its agents upon enquiry, or have excited the apprehension of the most careful and cautious. The wrong itself was not only unusual, but it is believed to be wholly without precedent; certainly the diligence of counsel and the researches of the court have failed to discover any similar case. Under such circumstances we think it would be harsh and oppressive to impose a liability upon the defendants.

The court did not err in sustaining the demurrer, and its judgment is affirmed.

*Affirmed.*