LYDA GARRETT AND PAULINE GARRETT, BY HER NEXT FRIEND, v. SOUTHERN RAILWAY COMPANY AND THE PULLMAN COMPANY.

(Filed 19 December, 1916.)

**1. Carriers of Passengers—Pullman Company—Duty to Passengers—Assault.**

Though the Pullman Company is not, technically speaking, regarded as a common carrier or its coach in a passenger train in the sense of an inn, it nevertheless owes a duty to its passengers to reasonably protect them from assault and robbery by its own employees and by others.

**2. Same—Evidence—Demurrer.**

Where the evidence is conflicting, but with evidence in plaintiff's behalf tending to show that she was boarding a Pullman car with her railroad and Pullman ticket in the presence of its conductor, who was assisting her, and was assaulted and robbed by an unknown person, which the conductor could readily have prevented, the evidence should be construed in the light most favorable to the plaintiff, and a demurrer thereto should be overruled.

**3. Appeal and Error—Evidence Immaterial—Expressions by Court.**

Where a Pullman Company is sued for damages arising from an assault and robbery of a passenger, and the testimony is sufficient to sustain a verdict in plaintiff's favor, the admission in evidence of the contract between the Pullman Company and the railroad, with later expression by the judge, in the absence of the jury, is not reversible error, if erroneous.

Two actions in the Superior Court of BUNCOMBE County, one by Lyda Garrett, plaintiff, and one by her daughter, Pauline, as plaintiff, were instituted in the Superior Court of Buncombe County to recover damages for a personal injury, against the Southern Railway Company and the Pullman Company, and were duly consolidated by consent and tried at May Term, 1916, *Harding, J.,* presiding, upon these issues:

1. Was the Southern Railway Company engaged in operating the train which the plaintiff was about to board at Lexington, Ky., on the night of July 6, 1915, as alleged in the complaint? Answer: "Yes."

47—172

2. Was the plaintiff Lyda Garrett injured by the negligence of the defendant Southern Railway Company, as alleged in the complaint? Answer: "Yes."

3. Was the plaintiff Lyda Garrett injured by the negligence of the defendant the Pullman Company, as alleged in the complaint? Answer: "Yes."

4. What damage, if any, is the plaintiff Lyda Garrett entitled to recover, as alleged? Answer: "$1,500."

Similar issues were submitted as to Pauline Garrett. In her case the jury assessed the damages at $2,000. The trial judge set aside the findings of the jury as to the defendant the Southern Railway Company, and rendered judgment against the Pullman Company, from which said defendant appealed.

*J. T. Horney and Jones & Williams for plaintiffs.*
*H. T. Wilcoxon, A. Hall Johnston for defendant the Pullman Company.*

BROWN, J. The plaintiffs sue to recover damages for negligence upon the part of the defendant in failing to protect them from assault committed by a negro in the railway station at Lexington, Ky., while the defendant was a passenger upon the Southern Railway and in the care and custody of the Pullman Company. At the conclusion of the evidence the defendant moved to nonsuit and excepted to the ruling of the court overruling the motion. The evidence, taken in its most favorable light for the plaintiff, tends to prove that plaintiffs had purchased tickets on the Pullman from Lexington to Asheville, which entitled them to a lower berth. In addition, plaintiffs had the necessary railroad transportation authorizing them to travel on the railway from Lexington to Asheville.

The plaintiff Lyda, accompanied by her sister, who was also a passenger, and her little 6-year-old daughter, Pauline, proceeded to the proper Pullman car and placed themselves in charge of its conductor. The sister, Mrs. McClelland, was helped on the car first by the conductor. The said conductor then took the plaintiff's baggage and put it on the Pullman car platform and as the plaintiff Lyda was handing her 6-year-old daughter, Pauline, to the conductor to be put up on the platform, she was assaulted by a negro.

The testimony tends to prove further that the negro dragged her and her daughter across two railroad tracks and the station platform and threw the plaintiff Lyda down and robbed her; that during this time the Pullman conductor remained motionless and made no effort to prevent the robbery or the assault, although the struggle lasted for several minutes.

The evidence tends to prove that the conductor was in easy reach and could have assisted the plaintiff and could probably have prevented the injuries. The evidence tends further to prove that the child Pauline was dragged along with her mother, very badly frightened and seriously hurt.

Upon a motion to nonsuit, we must assume the facts testified to by the plaintiff and her sister to be true, and they must be construed in the light most favorable to the plaintiff, for the jury seems to have been impressed with the truthfulness of their testimony. It is but just to the Pullman conductor to state that he testified that when the plaintiff Lyda was assaulted he was 40 feet away from her, and that he heard the scream and saw the man grab at her pocketbook; that he halloed at him and ran over as quickly as possible to assist her.

It is contended that the defendant is not liable because it is neither a common carrier nor an innkeeper. It is true that a sleeping car is a place for the reception of travelers, provided generally by the railroads to make traveling over their lines more attractive; but it is not an inn. The question as to whether it is a common carrier has been decided differently in different States. In some few States sleeping car companies are held to be common carriers. In a large majority of States and by the Federal courts they are held not to be common carriers. *Blum v. So. P. P. Co.,* 500 Fed. Cases, No. 1574; *Lemon v. The Pullman Co.,* 52 Fed., 262. The better view seems to be that while these companies provide a vehicle for passengers to ride in, and accommodations for their comfort while riding, the railway company and not the car company undertakes and is responsible for the transportation, and has entire charge of the journey. Nevertheless, it is generally agreed that, however these companies may be classified, it is their duty to guard passengers in their care from harm so far as it can reasonably be done. The company must guard passengers from the attacks of wrong-doers, if such attacks can be foreseen, and it is their duty to protect them from annoyance and insult, not only from their own servants but from all others. *Connell v. Ry.,* 93 Va., 44; Beale on Innkeepers, sec. 373.

In the notes Am. and E. Ann. Cases, volume 26, page 902, it is said: "The person placed in charge of a sleeping car is bound as an employee of the sleeping car company to the exercise of ordinary care for the protection and comfort of all passengers using the car in accordance with the regulations of the company."

In *Calder v. So. Ry. and Pullman Co.,* 89 S. C., 287, it is held that the carrier and the sleeping car company are both liable for the negligent failure of the servants of the latter to protect passengers in their cars.

In *Pullman Co. v. Nortan,* 91 S. W., 841, the Texas Court of appeals declares that a railway company and a sleeping car company both owe to a passenger the duty of exercising care in protecting him from injury.

In *Hill v. Pullman Co.,* 188 Fed., p. 501, it is held that the sleeping car company was answerable in damages to a passenger for an assault in the car under the evidence in that case.

In *Younglove v. Pullman Co.,* 207 Fed., 798, it is held that the defendant as a carrier is required to use due care for the protection and safety of its passengers, not only while the passenger is in the car, but until the passenger alights from the car.

In *Pullman Co. v. Hoyle,* 115 S. W., 316, it is held that a sleeping car company owed a passenger the duty to safely discharge her at her destination, and was liable for any injury resulting from negligence in that respect.

An investigation of the authorities discloses that they all hold that it is the duty of a Pullman company, although not technically a common carrier, to exercise reasonable care in the protection of passengers holding tickets upon the car. It must be conceded that if the testimony offered by the plaintiffs is true, the defendant's conductor entirely failed to protect them from the assault and robbery committed at the very steps of the car while the conductor was helping them into it.

The motion to nonsuit is properly overruled. The defendant assigns error because the court admitted in evidence a contract between the Pullman Company and the Southern Railway Company and then remarked in the absence of the jury: "I am of the opinion that the contract is not competent evidence in this case, as I don't see how it could affect any of the rights of the plaintiff."

We have examined the contract and find that there is nothing in it which would absolve the defendant from liability under the testimony introduced by the plaintiff.

The other assignments of error relating to the evidence are without merit and do not need any discussion. The charge of the court presented the law and the evidence to the jury in a clear and correct manner. The court might well have charged that if the facts are as testified to by the plaintiffs, the defendant is liable for the injury, of course, stating the other side of the controversy.

As to whether the Southern Railway Company is liable is a matter not before us.

No error.