𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

THE CHESAPEAKE AND OHIO RAILWAY COMPANY v.
KATE S. BAKER, ADMINISTRATRIX OF THE ESTATE
OF M. H. BAKER, DECEASED.

December 22, 1927.

Reheard March 1, 1928.

1.  CARRIERS OF PASSENGERS—*Negligence—Degree of Care to be Exercised by Carrier.*—It is the duty of the carrier of passengers to use the highest degree of care for their safety known to human prudence and foresight, and it is liable for the slightest negligence, against which human care and foresight may guard.

2.  CARRIERS OF PASSENGERS—*Negligence—Degree of Care to be Exercised by Carrier—Care Applies to Running of Train and Equipment—Derailment.*—The degree of care required of a carrier for the safety of its passengers applies not only to the manner in which its train is being run by its engineer, but also to the running gear and equipment of the engine, tender and cars, and to the way in which its road bed is constructed, and its ties and rails are laid and maintained; and, if the carrier fails to exercise such care in any of these particulars, and such failure causes a derailment which results in injury to a passenger, the carrier is liable therefor.

3.  CARRIERS OF PASSENGERS—*Action by Passenger for Negligence—Basis of Liability—Burden of Proof.*—In an action against a carrier by a passenger, the failure of the carrier to perform the duties imposed by law upon it, is the basis of liability to the passenger for injury, and the burden of proof is on the injured passenger to establish the negligence of the carrier. This burden does not shift, but continues through the case.

4.  CARRIERS OF PASSENGERS—*Presumption of Negligence.*—While the negligence of a carrier of passengers, in an action by a passenger for injuries, is never presumed from the mere fact of injury, yet an injury may occur under such circumstances as will warrant an inference or presumption of negligence.

5.  CARRIERS OF PASSENGERS—*Derailment—Injury to Passenger—Presumption of Negligence.*—Where a passenger is injured in a derail-

NOTE—For an addendum to note denying a rehearing, see *Chesapeake & Ohio Ry. Co.* v. *Baker*, 150 Va.

ment of a passenger coach, by reason of the carrier's duty as such, and the fact that the train and track are under its exclusive control and management, and the accident is such that in the ordinary course of things it does not occur, if those who have the control or management use proper care, the liability of the carrier is to be determined upon the principle of negligence in accordance with the phrase or maxim, *res ipsa loquitur;* or, in other words, an injury under such circumstances is held to warrant the presumption of negligence, which puts the burden upon the carrier to disprove the existence of negligence by evidence that as a matter of fact all proper and reasonable care had been employed.

6. Carriers of Passengers—*Derailment—Action by Passenger for Injuries—Prima Facie Case—Case at Bar.*—In the instant case, an action by a passenger against a carrier for injuries sustained in a derailment, the plaintiff proved that he was a passenger of the defendant; the derailment of the coach; his injuries in consequence thereof, and the extent of his injuries. He also undertook to prove by a farmer and automobile mechanic that there were some rotten ties under the broken rail that contributed to the accident.

*Held:* That the passenger made out a *prima facie* case, by the aid of the legal presumption, upon proof simply of the derailment and the consequent injury to him while a passenger.

7. Carriers of Passengers—*Action by Passenger—Derailment—Presumptions and Burden of Proof.*—In an action by a passenger for injuries sustained where a car in which he was traveling was derailed, upon the plaintiff making out a *prima facie* case by proving the derailment and his consequent injury, the burden was upon the defendant to show that it exercised that high degree of care required of it by law.

8. Carriers of Passengers—*Derailment—Action by Passenger—Defendant showing that Derailment was Due to Transverse Fissures—Case at Bar.*—In the instant case, an action by a passenger against a carrier for injuries sustained in a derailment, the plaintiff made out a *prima facie* case by proving the derailment and his consequent injuries. Defendant proved that the track at the point of the derailment was ballasted with stone; that the rails were the best standard rails; that the ties were sound white oak ties; that the track was regularly and properly inspected according to the best practice, and that the sole cause of the breaking of the rail that caused the derailment was transverse fissures therein.

*Held:* That thereupon it became necessary for the defendant to prove what a transverse fissure was, how it occurs in a rail, and whether any means had been developed to prevent it.

9. Carriers—*Derailment—Transverse Fissures.*—A transverse fissure is a term applied to a type of fracture which has its origin in the interior

of the head of a rail and which progressively enlarges from a definite nucleus.

10. CARRIERS—*Derailment—Transverse Fissures—Prevention.*—So far, notwithstanding the prevalence of fractures due to transverse fissures, at present there does not appear to be any remedy or means of discovering this latent defect.

11. CARRIERS OF PASSENGERS—*Derailment—Transverse Fissures—Case at Bar.*—In the instant case, an action by a passenger against a carrier for injuries incurred in a derailment, the derailment was due to the breaking of a rail, and from defendant's evidence it appeared that the sole cause of the breaking of the rail was transverse fissures. The particular rail that caused the derailment had been down seven years, and had been inspected twice a day by the track walker, and at other times by other employees, with the result that no defect was discovered in the rail. Every precaution suggested by experience and science had been taken to insure the safety of this particular rail.

*Held:* That a verdict and judgment for plaintiff should have been set aside and judgment entered for defendant.

ON REHEARING.

12. NEGLIGENCE—*Res Ipsa Loquitur.*—The doctrine of *res ipsa loquitur* is one of presumption to be resorted to only in the absence of positive evidence.

13. CARRIERS—*Derailment—Transverse Fissures—Application of Doctrine of Res Ipsa Loquitur—Case at Bar.*—The instant case was an action by a passenger against a carrier for injuries sustained in a derailment. It was shown beyond doubt that the accident was due to a defective rail, more specifically to a transverse fissure. This rail was made by a standard rail maker, and had been subjected to all the tests which are applied by those corporations engaged in that business. These tests revealed no defect, and there was nothing to put anyone on notice that any such latent trouble existed.

*Held:* That the doctrine of *res ipsa loquitur* had no application.

14. CARRIERS OF PASSENGERS—*Injuries Sustained in a Derailment—Ties not in First Class Condition—Case at Bar.*—The instant case was an action by a passenger against a carrier for injuries sustained in a derailment. It was shown that the accident was due to a defective rail—a transverse fissure. Taking the case as upon a demurrer to evidence, it may be conceded that some of the supporting ties were not in first class condition, but no more was required of the railway than that they should appear to be in condition to carry the load and bear the stress of good rails used in an ordinary way. There was nothing to indicate that the ties were not sufficient for their purpose. The railway had a right to assume that the rail was a

good one. The burden of proof was upon the railroad to show that it maintained a roadway sufficient to carry normal traffic upon good rails.

*Held:* That this burden was carried by the railroad, and that the plaintiff failed to prove negligence—that is, a state of facts which would indicate the existence of danger from defective ties or from some other source.

Error to a judgment of the Hustings Court, Part II, of the city of Richmond, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*D. H. Leake* and *Leake & Spicer*, for the plaintiff in error.

*Haden & Haden* and *M. J. Fulton*, for the defendant in error.

Christian, J., delivered the opinion of the court.

This is an action by M. H. Baker against the Chesapeake and Ohio Railway Company to recover damages for a personal injury. The plaintiff was a passenger on train No. 12, one of the defendant's passenger trains, on its James River division on the morning of the 20th day of January, 1925, and was injured when the train upon which he was a passenger was derailed in the vicinity of Lee Station, Virginia. There was a verdict for the plaintiff for $20,000.00 damages, which the trial court refused to set aside, and upon which it entered judgment for the plaintiff. The plaintiff died after the verdict and judgment, and the action was revived in the name of his administratrix.

On the morning of the 20th day of January, 1925, M. H. Baker boarded passenger train No. 12 of the Chesapeake and Ohio Railway Company at Columbia, Virginia; took his seat in the third or last coach in the train, and paid his fare to Richmond, Virginia. After this train had left Lee Station, Goochland county, running at the schedule rate of speed, on a straight piece of track, and had gotten something over a mile from said station, the rear coach of the train was derailed, turned over and rolled down an embankment. Baker was thrown into the top of the coach and his head was cut.

The derailment of this coach automatically stopped the train. The train crew went back to the wreck; got the passengers out of the coach; put them into the next coach, which was not derailed except its rear trucks. After these trucks had been retracked, and the train crew had investigated the cause of the derailment, the train proceeded to Richmond, where Baker was taken to Memorial Hospital, examined and treated for ten days, then discharged as cured.

Inspection of the track showed that one of the rails broke into eleven pieces; the ends of this rail remaining attached to the adjoining rails. As far as inspection showed this broken rail was the cause of the derailment of the coach.

After Baker returned to his home, although the cut upon his head, which was the only injury that the physicians at the hospital could discover, had healed, he continued to suffer pain and nervousness as the result of this accident up to the time of the trial of this case.

[1, 2] Baker being a passenger of the common carrier, brought his action for damages for $30,000.00 against the railway company, alleging that his injury, pain and

suffering was caused by the breach of its well established duty imposed upon it by law as follows: It is the duty of the carrier of passengers to use the highest degree of care for their safety known to human prudence and foresight, and it is liable for the slightest negligence, against which human care and foresight may guard. This degree of care is required and applies not only to the manner in which its train is being run by its engineer, but also to the running gear and equipment of the engine, tender and cars, and to the way in which its road bed is constructed, and its ties and rails are laid and maintained, and if the carrier fails to exercise such care in any of these particulars, and such failure causes a derailment which results in injury to a passenger, the carrier is liable therefor. *Norfolk-Southern Railroad Company* v. *Tomlinson*, 116 Va. 153, 81 S. E. 89.

[3-5] The law governing the trial of cases of this nature is well established in this State. The failure of the carrier to perform the duties imposed by law upon it is the basis of liability to the passenger for injury, and the burden of proof is on the injured passenger to establish the negligence of the carrier. This burden does not shift, but continues through the case. While negligence of the carrier is never presumed from the mere fact of injury, yet an injury may occur under such circumstances as will warrant an inference or presumption of negligence. However, it is well settled that where a passenger is injured in a derailment of a passenger coach, that the carrier by reason of its duty as such, and the fact that the train and track are under the exclusive control and management of the carrier, and the accident is such that in the ordinary course of things it does not occur if those who have the control or management use proper care, the liability of the

carrier is to be determined upon the principle of negligence in accordance with the phrase or maxim, *res ipsa loquitur;* or, in other words, an injury under such circumstances is held to warrant the presumption of negligence, which puts the burden upon the defendant *to disprove the existence of negligence by evidence that as a matter of fact all proper and reasonable care had been employed.* *Norfolk-Southern Railroad Company* v. *Tomlinson, supra; Hines* v. *Beard*, 130 Va. 286, 107 S. E. 717; *Riggsby* v. *Tritton*, 143 Va. 903, 129 S. E. 493, 45 A. L. R. 280.

There were several exceptions taken by the defendant and presented here to the rulings of the trial court upon the admission and rejection of evidence, and the argument of counsel before the jury, but careful study of the evidence satisfies us that the objection by the defendant to the plaintiff's instructions upon the ground that there is no evidence upon which they could be based, and the motion of the defendant to set aside the verdict of the jury and enter judgment for the defendant because there is no evidence to support the verdict, raise the same and sole question, for decision by us; in other words when the presumption and all the facts and circumstances are considered, is there any evidence of negligence upon which a jury could find a verdict for the plaintiff?

[6] The plaintiff proved that he was a passenger of the defendant; the derailment of the coach; his injuries in consequence thereof, and the extent of his injuries. He also undertook to prove by a farmer and automobile mechanic that there were some rotten ties under the broken rail that contributed to the accident. The passenger made out a *prima facie* case, by the aid of the legal presumption, upon proof simply of the derailment and the consequent injury to him while a passenger.

[7, 8] Upon the plaintiff making out a *prima facie* case the burden was upon the defendant to show that it had exercised that high degree of care required of it by law. It proved that the track at the point of the accident was ballasted with stone; that the rails were the best standard rails, that they had under them sound white oak ties, and that the track was regularly and properly inspected according to the best railroad practice. The officials and employees in charge of the maintenance of way visited the scene of the derailment soon after it occurred and every one of them, including the train crew, testified that the sole cause of the derailment was the breaking of the rail, and those who were conversant with transverse fissures testified that the sole cause for the breaking of the rail was the transverse fissures therein.

[9] Thereupon it became necessary for the defendant to prove (a) what a transverse fissure is, (b) how it occurs in a rail, and (c) whether science has developed any means to prevent it. A transverse fissure is a term applied to a type of fracture which has its origin in the interior of the head of a rail and which progressively enlarges from a definite nucleus.

Transverse fissure was first brought to the attention of the Interstate Commerce Commission in 1911. They have since appeared in large numbers and are chiefly prevalent on trunk lines.

Railroad engineers and those engaged in the safe operation of railroads have established by experiment and observation that the cause of transverse fissure is in the manufacturing process, rather than in the subsequent service to which the rails are put.

[10] So far, notwithstanding the prevalence of this kind of fracture, there seems to be no promise, at present, of any remedy or means of discovering this latent

defect.   They occur in different parts of the length of the rail.   Several incipient fissures are commonly present in each rail which fails from this type of fracture. They have been found in rails only one month old and also those which were thirty years old.

[11] The particular rail that caused the derailment had been down seven years, and had been inspected twice a day by the track walker, and at other times by other employees, with the result that no defect was discovered in the rail.   This rail was purchased from the Bethlehem Steel Company that built it according to standard specifications of the American Railway Engineering Association.   This rail was branded and every detail of manufacture shown, including its chemical composition, melt number and also the position of the ingot from which the rail was made.   After the rail was manufactured and before it left the manufacturer it was subjected to chemical tests, and physical or mechanical tests.   Thus it will be observed that every precaution suggested by experience and science had been taken to insure the safety of this particular rail.

Counsel for the plaintiff in their oral and written argument before us have characterized this rail as an inferior rail, and claimed that rotten ties under this rail had contributed to the development of the incipient transverse fissure.   This position presupposes two things, neither of which are proven.   First that the rail was inferior and that there were rotten ties under it; second that the defendant knew of the incipient fissure in the rail and should not have put any ties under it but the very best.

The presumption of negligence arising from the derailment and injury of the passenger having been rebutted, and no other evidence of negligence pro-

duced, there was no evidence upon which the jury could base a verdict, therefore the verdict of the jury should have been set aside by the trial court and judgment entered for the defendant. This court will enter here such judgment as the trial court should have done.

*Reversed.*

## UPON A PETITION TO REHEAR.

Per Curiam.

[12, 13] The doctrine of *res ipsa loquitur* has no application to this case, for that doctrine is one of presumption to be resorted to only in the absence of positive evidence. It is shown beyond peradventure that the accident was due to a defective rail, more specifically to a transverse fissure. This rail was made by a standard rail maker, and had been subjected to all the tests which are applied by those corporations engaged in that business. These tests revealed no defect, and there was nothing to put anyone on notice that any such latent trouble existed.

[14] Taking the case as upon a demurrer to evidence, it may be conceded that some of the supporting ties were not in first class condition, but no more was required of the railway than that they should appear to be in condition to carry the load and bear the stress of good rails used in an ordinary way. We are of opinion that in no aspect of the case was there anything to indicate that these ties were not sufficient for this purpose. The railway had a right to assume that the rail was a good one. If we start with this assumption, then the only burden placed upon it was to main-

tain a roadway sufficient to carry normal traffic upon good rails, and this burden is carried.   When the case is all in, the burden rested upon the plaintiff to prove negligence—that is, to prove a state of facts which would indicate the existence of danger from defective ties or·from some other source, and this burden has not been carried.

The petition to rehear is denied.

NOTE—For an adendum to this note denying a rehearing, see *Chesapeake & Ohio Ry. Co.* v. *Baker*, 150 Va.