## CHESAPEAKE & O. RY. CO. v. JETER.

### No. 6392.

United States Court of Appeals Fourth Circuit.

Argued April 4, 1952.

Decided May 3, 1952.

Bert H. Early, Huntington, W. Va., (C. W. Strickling and Fitzpatrick, Strickling, Marshall & Huddleston, all of Huntington, W. Va., on brief), for appellant.

J. Howard Hundley, Charleston, W. Va., for appellee.

Before SOPER and DOBIE, Circuit Judges, and HUTCHESON, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Southern District of West Virginia, sitting with-

out a jury, awarding $2,500.00 to the plaintiff for damages incurred as a passenger on the defendant's train when it collided with a bulldozer on the tracks near Lowmoor, Virginia.

The judgment of the District Court was based upon the negligence of the defendant's acting fireman in failing to keep a proper lookout on the track ahead. We are called upon to decide whether this finding is clearly erroneous. We think that it is not and that the judgment should be affirmed.

As the facts appear in the record, the plaintiff boarded the defendant's eastbound passenger train No. 104 at Talcott, West Virginia, on Sunday afternoon, July 29, 1951, to travel to Clifton Forge, Virginia. At a point approximately seven miles east of Covington, Virginia, and six miles west of Clifton Forge, the locomotive struck an orange colored bulldozer standing on the eastbound main line track and overturned, killing the acting fireman and partially derailing the six-car train. At the time of the collision, the plaintiff was seated on the left, or north, side of the rear coach. She was thrown from her seat and received injuries consisting, chiefly, of a sprained ankle, a sprained ligament in her back and some bruises to her knee. The District Court found that her injuries were not extremely serious, and no issue is raised upon appeal as to the amount of damages awarded.

The track on which Train No. 104 traveled for at least 2,000 feet before hitting the bulldozer is on a left curve. Immediately to the right of this eastbound track is a very steep hillside, somewhat covered with brush and trees. It was down this hillside that the bulldozer apparently traveled to land on the track below.

The left curve prevented the acting engineer from seeing any appreciable distance ahead. The acting fireman, who died in the collision, was on the other side of the cab and was the only person in the engine who could have seen the bulldozer.

There is a block signal, which the fireman and engineer are required to observe, west of the collision point. The acting fireman saw this and called out "signal clear." Shortly thereafter, about 450 feet from the collision point, he also cried out "truck on the track". The engineer immediately made a full emergency application of the brakes, which functioned properly. It seems clear that at this point everything possible was done to stop the train. The train's speed at that time was between 45 and 50 miles per hour, and it appears that it could be stopped in about 900 feet by the emergency application, and in about 1100 to 1200 feet by an ordinary application of the brakes. With respect to these facts, the District Court found as follows:

"* * * Mr. Wood, who was acting as fireman, did have a view, by which he could have seen the bulldozer as far back as the crossing, which was 1550 feet from the place where it was; he could have seen it, not only on the track, but if it had been coming down the side of the hill towards the track * * * and I find, as a fact, that he did not see the bulldozer until he was within approximately 450 feet away from it; and so I further find that during that interval * * * the fireman was not keeping a proper lookout and I find that his failure to keep that lookout was the proximate cause of the plaintiff's injury, because if he had kept the proper lookout and had seen the obstruction as far back as the crossing, the engineer could have been notified and the train could have been stopped with an ordinary service application of the brake which would not have caused any jolt."

We do not think the evidence revealed by the record indicates any error in these findings. It is apparent that, whatever the amount of trees and shrubbery on the south hillside at the time of the collision, the acting fireman had a clear view of the track for a sufficient distance from the position of the bulldozer to have given warning and enabled the engineer to have stopped the train smoothly. That the bulldozer was not seen until the cry "truck on the track", some 450 feet from it, justifies the conclusion that a proper lookout was not kept. Virginia law, that of the place

of the tort, is controlling here and it merits no argument that such a failure is inconsistent with the high duty of care required of carriers by Virginia decisions for the safety of their passengers. Chesapeake & O. Railway Co. v. Baker, 149 Va. 549, 140 S.E. 648, 141 S.E. 753; Chesapeake & O. Railway Co. v. Hibbs, 142 Va. 96, 128 S.E. 538, 41 A.L.R. 1083; Norfolk-Southern R. Co. v. Tomlinson, 116 Va. 153, 81 S.E. 89; Connell's Ex'rs v. Chesapeake & O. Ry. Co., 93 Va. 44, 24 S.E. 467, 32 L.R.A. 792.

The defendant contends, however, that there is no evidence as to when the bulldozer came on the tracks. The fireman of a westbound freight train testified that, when his train passed the collision point some 27 to 29 minutes before, the tracks were bare. Outside of that time limit the record is silent, and the defendant would have us suppose that the bulldozer might have crashed down the hill and landed on the track when the train was within 900 feet of it and there was not time even for an emergency stop. But such a supposition fails of its own logic, for not only would the cry of the acting fireman have more clearly indicated such a situation rather than, as it did, one in which the bulldozer was already on the track, but also the crashing of the bulldozer down the hillside would have attracted his attention substantially before his actual warning. It cannot be supposed that such an occurrence would be a quiet one, or that it would not take at least several seconds to happen.

The fact that the acting fireman did see the block signal ahead and call "signal clear", and this in enough time to have stopped the train if he had also then seen the bulldozer, some 160 to 165 feet east of the signal, is somewhat mystifying but clearly not fatal to the District Court's findings. While such a situation is susceptible to the possible inference that the bulldozer was not yet on the track, it is more suggestive of the conclusion that the fireman only bestowed a hasty glance on the signal and did not properly scan the whole area in front of him. It is at least highly improbable, and would be a strange coincidence, that the bulldozer came on the track at the very second when it was seen by the acting fireman.

While a plaintiff under Virginia law is required to furnish factual evidence of a negligent act, and cannot leave the question to conjecture, guess or random judgment, Arnold v. Wood, 173 Va. 18, 3 S.E.2d 374; Johnson v. Richmond F. & P. R. Co., 160 Va. 766, 169 S.E. 603; Chesapeake & O. R. Co. v. Heath, 103 Va. 64, 48 S.E. 508; yet "where the circumstances proved are such as to point by a fair and reasonable inference to the conclusion that the defendant was guilty of negligence, they are sufficient to take the case out of the realm of conjecture and into the field of legitimate inference, and to support a finding * * * that the defendant was guilty of negligence." Thress v. Hackler, 155 Va. 389, 398, 154 S.E. 502, 506.

For the foregoing reasons, the judgment of the District Court will be affirmed.

Affirmed.