Statement.

𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

VIRGINIA RAILWAY AND POWER CO. V. McDEMMICK.

September 9, 1915.

1. INSTRUCTIONS—*Conflicting Theories of Case.*—Where there is a conflict of evidence and two conflicting theories of a case, one supported by the plaintiff and the other by the defendant, and the theory of one party has been fully presented to the jury, the other party is entitled to an instruction fully propounding the principles of law applicable to his theory.

2. CARRIERS—*Duty to Passengers—Injury—Proximate Cause—Insurer.*—While carriers of passengers for hire are held to the highest degree of care and diligence in guarding their safety, and the slightest imputation of negligence against which human care and skill can provide, will make them responsible for any defect of machinery or for any negligence on the part of their servants, to warrant a recovery for an injury to a passenger, the negligence complained of must stand as the proximate cause of the injury sustained, that is, it must be the direct and efficient cause of the injury. Under no circumstances is a carrier of passengers held as an insurer of their safety.

3. CARRIERS—*Injury to Passengers by Strangers or Fellow-Passengers.*—While it is the duty of a carrier of passengers to protect them against violence or disorderly conduct on the part of its own agents or other passengers and strangers, when such violence or misconduct may be reasonably expected or prevented, yet it is not liable to an action for damages when it is not shown that the company had any notice of any act which justified the expectation that a wrong would be committed. The wrong or injury done to passengers by strangers must have been of such a character, and perpetrated under such circumstances, as that it must reasonably have been anticipated and naturally expected to occur in order to hold the carrier liable.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff. The defendant assigns error.

*Reversed.*

The opinion states the case.

*Henry W. Anderson, W. H. Venable* and *A. D. Christian,* for the plaintiff in error.

*James G. Martin* and *William F. Clarke,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was brought by Charles McDemmick to recover of the Virginia Railway and Power Company damages for injuries alleged to have been sustained by him while a passenger on one of the defendant's electric cars. There was a verdict and judgment for the plaintiff, to which this writ of error was awarded.

The facts and circumstances attending the injury of which the plaintiff complains are as follows: The defendant company owns and operates an electric car line in the city of Norfolk, its cars traversing, among others, Granby street and Bute street. Granby street runs approximately north and south, while Bute street runs east and west, intersecting Granby street at right angles. The cars of the defendant are operated on Granby street on two tracks. Upon the track on the east side of this street the cars run north, and upon that on the west side south. On October 31, 1913, one of the defendant's cars was moving in a northerly direction on the east track in Granby street, running towards its intersection with Bute street, and about three blocks south of Bute street the car was stopped and a negro man, who had been drinking and apparently was somewhat intoxicated, boarded it. As the car approached a point about a block from Bute street, this negro man, having entered the car and taken a seat, lighted a cigar and commenced smoking; whereupon, the

conductor called his attention to the rules of the company forbidding smoking in its cars, and the negro thereupon came out on the rear platform, continuing to smoke, and the conductor there told him that it was not permissible for him to smoke even on the platform. The negro entered into an argument with the conductor while standing on the platform in such a position that he obstructed the door between the step of the car and the platform (this being a pay-as-you-enter car with a folding door). At this time the car was making the turn from Granby into Bute street, and in so doing the trolley wheel slipped from the trolley wire, causing the car to stop about the middle of the turn. Requesting the negro to move away from the door, and being met with a positive refusal, the conductor caught hold of him and pushed him over to the left, asking a young white man—named Davis—about 18 years of age, who was standing on the platform to hold him until he, the conductor, could replace his trolley and get an officer to arrest the negro. The conductor then opened the door for the purpose of getting out to replace the trolley, and just about this time the plaintiff, McDemmick, having walked out from the point where the car customarily stops for passengers to the then position of the car, mounted its platform. At that time the negro had provoked Davis who was holding him, or *vice versa,* and they were engaged in a scuffle or a fight, and just as plaintiff stepped over to the left side of the platform to deposit his fare in the box the negro swung out his foot in such a manner as to strike the plaintiff in the lower part of his abdomen, and with such force as to injure him quite seriously.

There is some conflict in the evidence as to the whereabouts of the conductor at the time the plaintiff was thus injured, the conductor testifying that he knew nothing of the plaintiff's injuries until, after replacing the trolley on the wire, he boarded the car and with the assistance of

an inspector placed the negro under arrest and turned him over to an officer who appeared about the same time. On the other hand the plaintiff, in the testimony given by him, while not contradicting the conductor as to what had occurred before the conductor got off the car to replace the trolley, and detailing what took place in the scuffle or fight between the negro and Davis, stated just how he received the kick from the negro, and places the conductor as standing beside him, and further says: "This darkey kicked at the conductor, I believe, but the blow hit me." There is also conflict in the evidence as to whether or not the plaintiff, after depositing his fare in the box, could have gone on in the car and thus have avoided becoming engaged in the scuffle or fight between Davis and the negro, and thereby have escaped the injury he sustained from the kick that the negro made at Davis or the conductor. The negro who inflicted the injury upon the plaintiff was not called as a witness by either party; therefore, the only evidence as to the circumstances attending the act of the conductor in pushing the negro from the door over to Davis with the request that Davis hold him until the trolley could be gotten on the wire and some one gotten to take the negro off the car, is that of the conductor himself, and that of Davis testifying for the plaintiff, the plaintiff at that time not having gotten on the car. Other passengers who testified at the trial were not on the platform, but were inside of the car, and their testimony, somewhat confused, is not at variance with that of Davis, or the conductor, but, except in minute detail, is similar. The conductor stated: "Going around the curve the trolley came off and he (the negro) was still standing in the door and I asked him to get on the other side, and he would not do it, and I pushed him to the other side, and that boy (Davis) was standing there, and I didn't know his name, and I said I would have to lock him (the negro)

up, and the boy grabbed him, and I jumped off to put the trolley on."

Davis, testifying for the plaintiff, stated: "He (meaning the conductor) got to Bute street and the trolley comes off. This negro still stands there. I was standing in the corner and he (conductor) shoved him over to me.

"Q. Did the conductor say anything to you when the negro was backing to the door? A. He told me to keep him on the car until he could get the trolley on, until someone could take him off the car.

"Q. By a Juror: When was the first time the conductor asked you not to let the negro get off? A. When he started to put the trolley on. He was opening the door and shoved him over, and told me to keep him on the car until he could see an officer."

All of this occurred as mentioned when the plaintiff had not boarded the car, and Davis fixes the time when he did board it as being after the fight between him and the negro had begun, and states how it originated, saying: "I was standing in the corner and he shoved him over to me. He (the negro) tramped over my feet and I pushed him in the corner (on the far side of the platform) and he made a pass at me, and there was a couple of licks passed. Mr. McDemmick (plaintiff) got on the car. As far as seeing the conductor rub up against him, I did not see that part. This negro did kick at me or the conductor. I don't know which he kicked at, but I know that he kicked at one of us, and I was looking out for myself, and was not thinking of nobody else."

It appears, therefore, that when plaintiff got on the platform of the car it was standing on the curve by reason of the trolley having jumped the wire and necessarily he entered the car when the conductor opened the outer door to get out for the purpose of replacing the trolley and to summon an officer or aid to take charge of the negro, for

at that time the car was not at a regular stopping place and was not in service for receiving passengers at all, and as a matter of fact, but for the accident to the trolley, the outer door of the car would have been shut and would have prevented passengers from getting on. It does not appear that prior to that time the conduct or bearing of the negro, though insolent and very disagreeable, could reasonably have been regarded as menacing the safety of the passengers on the car. When plaintiff got on the car, standing on the curve, it was blocking other tracks and as plainly appears from the undisputed testimony of the conductor and other witnesses for the defendant, it was necessary that he replace his trolley as quickly as possible and proceed on his route; in other words, this stalled car was blocking all other traffic by its inability to proceed until its trolley was replaced.

In the foregoing statement we have not attempted to do more than state the material facts which the evidence proved or tended to prove, to show the character of the case submitted to the jury. As has been observed, there is a conflict in the evidence, which presents opposite theories of the case, the one supported by the testimony for the plaintiff, and the other supported by the testimony for the defendant.

At the instance of the plaintiff the court gave six instructions presenting to the jury his theory of the case, but refused an instruction asked by the defendant propounding the principles of law appertaining to its theory of the case, which instruction read as follows:

"The court instructs the jury that if you believe from the evidence that the injury, if any, to the plaintiff was unexpected and inflicted at a time when the servants of the defendant were unable to protect him therefrom, you must find for the defendant."

The refusal of the court to give this instruction constitutes the defendant's first assignment of error.

It cannot be maintained that the purport of this instruction was contained in other instructions given in the case. The purpose of this instruction was to present for the consideration of the jury the defendant's theory that it could not be held liable for the injury to the plaintiff which he alleges to have been proximately caused by the negligence of the defendant's conductor, because the injury occurred as a result of an entirely sudden and unexpected affray, occurring without warning and without an opportunity being offered to the defendant's servants to protect the plaintiff.

In numerous cases decided by this court it has been ruled that where there is a conflict in the evidence, and where there are two conflicting theories of the case, one supported by the plaintiff and the other by the defendant, and where the theory of one party has been fully presented to the jury, then the other party is entitled to an instruction fully propounding the principles of law applicable to his theory, if there be evidence tending to sustain it.

In *Richmond Traction Co.* v. *Martin's Admr.*, 102 Va. 209, 45 S. E. 886, the opinion of the court by Whittle, J., says, that "where two theories of a case are presented by the evidence, upon one of which the jury has sufficient instruction, it is error to refuse an instruction based upon the other theory of the case, which, if sustained, would require a different verdict, or to add to such an instruction a qualification which would withdraw from the jury the consideration of the last mentioned theory." See also *Adamson's Adm'r.* v. *N. & P. Trac. Co.*, 111 Va., 556, 69 S. E. 1055, and cases there cited.

We have adverted to the evidence in this case sufficiently to show, as we view it, that there was nothing in the conduct of the negro passenger while inside the car

from which it could, or should, have been reasonably in-
ferred or anticipated that he would become a source of·
danger and menace to the other passengers on the car.
While discourteous and provoking in manner, he was
neither profane nor vulgar, nor was he threatening in his
demeanor, but entirely submissive in his attitude, so that
it was not until he went out upon the platform that he
became at all unruly, and at that time, as the turn from
Granby into Bute street was being made, the trolley slipped
off the wire and the car came to a stop at the point where
the conductor had occasion to open the door to pass out
for the purpose of replacing the trolley.  Just then the
plaintiff entered upon the platform of the car where he
but a few moments later received the injury by a kick from·
the negro engaged in the fight with Davis.

The theory of the defendant, propounded in its instruc-
tion above set out, was not only that the ·injury to the
plaintiff occurred as a result of an entirely ˙sudden and·
unexpected affray, etc., but that it was guilty of no negli-
gence which was the proximate, direct and efficient cause
of the injury.  While carriers of passengers for hire are
held to the highest degree of care and diligence in guard-
ing their safety, and the slightest imputation of negligence
against which human care and skill can provide will make
them responsible for any defect of machinery, or for any·
negligence on the part of their servants, to warrant a re-
covery for an injury to a passenger, the negligence com-
plained of must stand as the proximate cause of the in-
jury sustained—that is, it must be the direct and effi-·
cient cause of the injury.  Under no circumstances is a·
carrier of passengers held as an insurer of their safety.
*Connell* v. *Ches. & Ohio Ry. Co.*, 93 Va. 44, 24 S. E. 467, 32·
L. R. A. 792, 57 Am. St. Rep. 786.

The opinion by Keith, P., in the case cited, reviews a
large number of the decided cases, among them the case

of *Batton and wife* v. *S. & N. Ala. R. Co.*, 77 Ala. 591, 54 Am. Rep. 80, where it was held that while it is the duty of a railroad company as a common carrier to protect its passengers against violence or disorderly conduct on the part of its own agents, or other passengers and strangers, when such violence or misconduct may be reasonably expected and prevented, yet it is not liable to an action for damages when it is not shown that the company had notice of any acts which justified the expectation that a wrong would be committed; the court's opinion saying: "All the cases upon the subject impose the qualification that the wrong or injury done passengers by strangers must have been of such a character, and perpetrated under such circumstances, as that it might reasonably have been anticipated or naturally expected to occur."

In the case at bar, as we have seen, up to the time that it became necessary for the conductor to replace the trolley of his car, nothing had occurred in the conduct of the negro passenger from which the conductor could have expected to actually hold him for the safety of the passengers in the car. To have done so would have been not only apparently unnecessary, but would have prevented the conductor from replacing the trolley so that his car could be removed from its position blocking the Granby street car tracks, upon which local traffic was moving and an express train due and momentarily expected. It is not denied that the plaintiff boarded the car as the conductor got off and replaced the trolley, it being necessary for him to get on the ground to replace it, as the car was standing on a curve and there was evidence tending to prove that the injury to the plaintiff by the kick from the negro was received by him in but a moment of time after he had gotten on the platform of the car where the fight between the negro and Davis was on, and that there was no time at which the conductor could have prevented the injury to the plaintiff. The conductor testified that he could not

have prevented it because he was on the ground replacing the trolley and did not know that the plaintiff had been kicked until he had gotten back on the car, which statements are corroborated by other testimony in the case.

Under the instructions upon which the case was submitted to the jury, they were warranted in finding for the plaintiff, although they might have believed from the evidence that the injury to the plaintiff was unexpected and inflicted at a time when the servants of the defendant were unable to protect the plaintiff. The instruction asked by the defendant and refused by the court submitted that theory of the case to the jury, propounding a correct principle of law applicable thereto which theory of the case was not submitted for the jury's consideration by any other instruction given, and there being evidence upon which to base the instruction, it was error to refuse it.

As the judgment of the circuit court has to be reversed because of the error in refusing defendant's said instruction, it becomes unnecessary to consider the remaining assignment of error which is to the ruling of the court in refusing to set aside the verdict of the jury because contrary to the law and the evidence.

The judgment of the circuit court is reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had therein not inconsistent with this opinion.

*Reversed.*