# Richmond

## MRS. FLORA CLEVELAND v. DANVILLE TRACTION AND POWER COMPANY.

March 2, 1942.

Record No. 2497.

Present, All the Justices.

The opinion states the case.

*Aiken, Sanford & Johnson*, for the plaintiff in error.

*Crews & Clement*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

Mrs. Flora Cleveland, the plaintiff in the trial court, instituted suit for damages caused by injuries sustained by her in alighting from the defendant's bus which was being operated on the streets of the city of Danville on the evening of November 12, 1940, about six o'clock.

The jury rendered a verdict for the plaintiff, assessing her damages at $500.00. At the close of the evidence, and after the jury had been instructed on the law, and had rendered its verdict, the defendant moved the court to set aside and annul the same because there was no evidence to support it. The court took time to consider this motion, and subsequently sustained it, giving its reasons therefor in clear and terse terms in its excellent opinion which is made a part of the record.

A simple statement of the facts is this:

At about the time stated, the plaintiff, who was employed in a down town department store, boarded the defendant's bus, as she was accustomed to do, for the purpose of going to her home. It was a dark night, and the bus was crowded. Mrs. Cleveland had a seat near its rear exit. As the bus approached its stopping place at which she was to alight, the space, which was the regular place for the discharge of passengers, was occupied by an automobile. The driver of the bus saw this and drove around the automobile, bringing his bus to a stop some twelve or fifteen feet beyond. He drew up at the curbing, or where the curbing would have been, if its continuity had not been broken by a private driveway extending from the street to a residence. This driveway was paved and it sloped gradually from where it met the sidewalk on its way to the street, covering a descent of four inches over the width of the sidewalk, which was three feet. The sidewalk was four inches above the level of the street. The driveway as it crossed the sidewalk, where the curbing would have been, was bounded on each side by curved concrete curbings.

A number of passengers alighted when the bus stopped, all safely and without incident, except Mrs. Cleveland, whose

descent was described by one of the plaintiff's witnesses in this language:

"Mrs. Cleveland stepped off, and as she stepped, she hit the curb and fell, and as she fell she said she thought she had broken her ankle."

The city of Danville locates, within its limits, the bus stops, of which there are many. The bus company has nothing to do with it and exercises no control over it. Many of these stops are located over driveways and alleys.

That carriers are not insurers of the safety of their passengers is settled. The law imposes upon them varying measures of degrees of care which differ according to the circumstances and conditions which obtain.

We said in the case of *Virginia Elec., etc., Co.* v. *Lenz,* 158 Va. 732, 164 S. E. 572, quoting from the case of *C. & O. Ry. Co.* v. *Baker,* 150 Va. 647, 143 S. E. 299, 301, that:

"A common carrier is not an insurer of the safety of its passengers against all accidents, and is only liable where the injury complained of was proximately caused by its negligence." *C. & O. Ry. Co.* v. *Hibbs,* 142 Va. 96, 128 S. E. 538, 41 A. L. R. 1083; *Virginia Ry., etc., Co.* v. *McDemmick,* 117 Va. 862, 86 S. E. 744.

Speaking of the general doctrine that negligence will never be presumed, but the burden rests upon the plaintiff to prove it affirmatively, we said in the case first mentioned:

"This rule is not changed by the standard of care which the carrier must observe. It is not an insurer."

The trial judge in his opinion in the case which we are considering very aptly said:

"Where a course of conduct is not prescribed by mandate of law, foreseeability of injury to one to whom duty is owed is of the very essence of negligence. If injurious consequences are not foreseen as a result of the conduct, then that conduct is not negligence." Thompson's Commentaries on Negligence, vol. 1, section 28.

In the same notable work we find the following:

"The rule, in imposing upon the carriers of passengers the highest degree of care has this limitation: It applies only to those means and measures of safety which the passen-

ger of necessity must trust wholly to the carrier. It is in general applicable only to the period during which the carrier is in a certain sense the bailee of the person of the passenger * * *." That there is an accident, and some person is hurt, does not prove negligence.

"Negligence, in law, involves the conception of a duty to act in a certain way toward others, and a violation of that duty by acting otherwise; * * * *.

"It is the duty of the operator of a motor bus to exercise reasonable care to see that the place selected for the discharge of a passenger is safe for that purpose * * * *." *Cooke v. Elk Coach Line*, 7 W. W. Harrington (37 Del.) 120, 180 A. 782.

The judge of the trial court again said:

"But where the common carrier does not locate or control the areas in which it must stop its busses for the purpose of taking on and discharging its passengers, I cannot think that it is required to see that these places are the safest which could be designated. Indeed, although it is said that the carrier must exercise the highest degree of care for the safety of its passengers, this rule is subject to the self-evident qualification that such degree of care is that which is compatible with the conduct of its business in a convenient and satisfactory manner. The utmost care in a literal sense would require a vehicle to travel at the lowest speed at which movement could be maintained. Such a method of travel would more nearly insure the safety of the passengers, but the public convenience would forbid the idea of adopting such a manner of performance."

We here make some observations in much the same way as the distinguished judge. The plaintiff urges that since the bus did not stop at a regularly designated point, it was under a higher obligation to her as to the safety of the place of alighting, as much as to say, that if the same conditions were found at a designated stop, the requisites of a reasonably safe place to alight would have been met. We perceive no distinction from which she may get comfort. There is no legal difference in the two theories. We do not see how the presence of the driveway, described, could render the

place one which was not reasonably safe. It seems to us that the driver of the bus, in view of the circumstances existing, adopted the plan which was more compatible with the interests of his passengers and his duty to them. He did the natural thing. That the plaintiff was hurt in alighting is what might have occurred at any one of a number of the bus stops in the city, or, for that matter, at any place where there was a curb or an inequality of any sort in the surface of the street and sidewalk. It is too bad that she was hurt; but, as we see it, it was just a plain accident. No negligence was involved.

A careful search for the law applicable to such a situation indicates that the weight of the decisions is with the defendant. There are a number of cases in which the facts are very similar and we indicate a few of them.

In *Meelhein* v. *Public Service Co-Ordinated Transport*, 121 N. J. L. 163, 1 A. (2d) 418, a non-suit was entered on the defendant's motion and the correctness of that ruling was under review. This was said:

"The plaintiffs, at the trial below, had the burden of the affirmative (* * *), and they had to establish facts from which the alleged negligence of the defendant may be reasonably inferred. * * * They attempted to support the burden by proving that the driver of the defendant's motor bus stopped said bus on Hall Avenue, that is, on a steep grade, and at a distance of twelve to twenty inches from the curbing. Mr. Meelhein alighted first and safely, and Mrs. Meelhein, who was pregnant at the time, and had been so for seven and one half months, fell to the street, while alighting, and sustained injuries.

"The defendant was under the duty of using 'a high degree of care' for the safety of its passengers (* * *), and of providing a reasonably safe place for them to alight. * * *

"Therefore, taking as true the stopping of a common carrier's motor bus on a steep grade, and from twelve to twenty inches from the curbing, without more, and giving thereto the benefit of all legitimate inferences deductible therefrom (* * *), we must determine whether or not same violated the defendant's duty of using a high degree of care for the safety of the plaintiffs, and of providing a reasonably safe

place for them to alight, and we conclude that such proof, standing alone, is insufficient to impose upon the defendant the burden of going forward, and therefore the ruling of the trial court is affirmed."

In *Perret* v. *George*, 286 Pa. 221, 133 A. 228, it was said:

"Street car companies are not required to observe the conditions of streets over which their cars travel, so as to stop their cars with exactness at places where passengers may avoid ordinary defects in the highway while alighting. To require otherwise would be to exact of such carriers a degree of care not consistent with efficient public service, and would impose an obligation impossible of performance, considering the condition of some of the highways of today. Street car companies, of course, cannot stop their cars for persons to alight at places manifestly dangerous, as where the car door opens to the side of a street immediately adjacent to an embankment, * * *."

In the case cited, a passenger in alighting from the street car stepped into a hole, incurring injuries. The car had passed the accustomed place for it to stop at an intersecting street, on account of a building operation in progress there. The court held that there was no liability upon the car company.

Reasoning from the opinion, in this case, the question arises, was there any condition in the place where the bus stopped, in the case in judgment, that could be said to be *manifestly dangerous?* We think not. The construction of the driveway and the sidewalk was usual and of approved type. There was nothing about it that imported danger.

The case of *Farrington* v. *Boston Elevated Ry. Co.*, 202 Mass. 315, 88 N. E. 578, involved facts very similar to those of our case. An instruction given to the jury by the court below was assailed. We quote it:

"If the plaintiff satisfied them that the accident occurred at the point at which she claimed it did, and (they) were satisfied that the place was a dangerous one to alight upon and amounted to a defect in the highway; and that the defendant knew that it was a dangerous place, or by the exercise of reasonable care might have known that it was so, and yet

stopped its car there in such a way as to amount to an invitation to the plaintiff to alight there, then she might recover." The court said:

"We are of opinion that a jury ought not to be allowed to find this cornerstone, taken in connection with its surroundings, to be a defect in the highway. It is a very common construction where a sidewalk, or any other reservation elevated as this was above the rest of the street, is crossed by a street or way, public or private. In the construction of a street it is good workmanship to have the sidewalk raised above that part of the surface of the street which lies next to the sidewalk, and speaking generally such a method of constructing a sidewalk is almost universal. There must be some way of getting from one level to the other, where the continuity of the sidewalk or raised reservation is interrupted by cross streets; and the way adopted here is and for generations has been one of almost universal use. Upon the evidence it must be held as a matter of law that the way was not defective."

It is patent, we think, that the defendant was not negligent. The judgment of the court below is

*Affirmed.*