**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, the 2nd day March, 2007.

Ryan Taboada,                                                    Appellant,

     against          Record No. 051094
                       Circuit Court No. CL0301075

Daly Seven, Inc.,                                                Appellee.

Upon a Petition for Rehearing

On March 3, 2006, this Court rendered a judgment in favor of Ryan Taboada, reversing in part the judgment of the trial court sustaining Daly Seven, Inc.'s demurrer, and remanding the case for further proceedings.  Taboada v. Daly Seven, Inc., 271 Va. 313, 626 S.E.2d 428 (2006).  On March 27, 2006, counsel for Daly Seven, Inc. filed a petition for rehearing.  In an order dated August 11, 2006, for reasons not pertinent to the merits of this case, we struck the petition for rehearing and permitted Daly Seven, Inc. to file another petition for rehearing.  Taboada v. Daly Seven, Inc., 272 Va. 211, 216, 636 S.E.2d 889, 891 (2006).  Daly Seven, Inc. filed a new petition for rehearing on August 31, 2006.  By an order entered November 17, 2006, this Court awarded Daly Seven, Inc. a rehearing pursuant to the provisions of Rule 5:39(e), but in doing so, did not set aside the judgment previously rendered on March 3, 2006.

Now, therefore, in consideration of the record, the briefs originally filed by the parties, the petition for rehearing of Daly Seven, Inc. filed pursuant to this Court's order of August 11, 2006, the response of Ryan Taboada to that petition, and the argument of the parties, the Court is of the opinion that, for the reasons

stated in the opinion in this case dated March 3, 2006, the judgment of this Court should not be set aside.  Accordingly, we will affirm the judgment of the trial court sustaining the demurrer to Ryan Taboada's claim under Code § 35.1-28, reverse the judgment of the trial court sustaining the demurrer to Ryan Taboada's common law claim, and remand the case for a trial on the merits of that claim.

JUSTICE AGEE, with whom JUSTICE KINSER joins, concurring in part and dissenting in part.

As the majority opinion accurately recites, this appeal arises from the circuit court's judgment sustaining Daly Seven's demurrer to Taboada's amended motion for judgment alleging Daly Seven was liable for injuries Taboada sustained as a result of Derrick Smith's criminal conduct.  While I agree with the majority opinion as to the disposition of Taboada's claim under Code § 35.1-28, I respectfully disagree that Taboada stated a common law claim for negligence cognizable in Virginia under the facts alleged.  In my view, the majority opinion is in error for at least two reasons.  First, the majority misreads the standard our precedent has applied to the duty of a common carrier to its passengers, which is the basis for the duty it now imposes on innkeepers.  Second, even if the standard derived by the majority was supported by our case law, the majority applies that standard in this case in a manner inconsistent with the common carrier cases.

As a general rule, "the owner or possessor of land is under no duty to protect invitees from assaults by third parties while the invitee is upon the premises."  E.g., Wright v. Webb, 234 Va. 527,

530, 362 S.E.2d 919, 920 (1987); Yuzefovsky v. St. John's Wood Apartments, 261 Va. 97, 106, 540 S.E.2d 134, 139 (2001). A narrow exception to this rule recognizes a cause of action when the plaintiff can establish that a special relationship exists between the defendant and either the plaintiff or the third party criminal actor, such that the defendant owes a duty of care to warn or protect the plaintiff from the danger of harm by the third party's criminal acts. Yuzefovsky, 261 Va. at 107, 540 S.E.2d at 139-40; Thompson v. Skate America, Inc., 261 Va. 121, 129, 540 S.E.2d 123, 127 (2001). Because Taboada was a registered guest of Daly Seven at the time of the assault, this case does involve a special relationship previously recognized in our case law. Thompson, 261 Va. at 129, 540 S.E.2d at 127 ("[E]xamples of such necessary special relationships that arise as a matter of law . . . include a common carrier and its passengers, an employer and its employees, an innkeeper and its guests, and a business owner and its invitees.") However, the existence of a special relationship alone does not establish any liability on the part of a defendant. A potential plaintiff must establish that the "special relationship also gave rise to a duty of care on the part of [the defendant] to protect [the plaintiff] from the danger of harm from the criminal act of [the third party]." See id. "The question whether a duty of care exists in a negligence action is a pure question of law." Burns v. Johnson, 250 Va. 41, 45, 458 S.E.2d 448, 451 (1995).

As the majority observes, this case presents the first occasion the Court has opined on the merits regarding an innkeeper's liability in tort when the plaintiff was a guest of the innkeeper at

3

the time he was the victim of a third party's criminal act.  The Court has, however, examined this issue in the context of other "special relationships that arise as a matter of law."  Pertinent to the analysis of the innkeeper's duty is our decision in Wright, where the plaintiff was the victim of a criminal act on the innkeeper's premises, but had the status of "business invitee" rather than "guest."  We held in Wright that

> a business invitor, whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee.

Id. at 533, 362 S.E.2d at 922; see also Gupton v. Quicke, 247 Va. 362, 442 S.E.2d 658 (1994).

In Wright, the Court enunciated the standard of "imminent probability of harm" from its analysis of the same cases the majority cites concerning a common carrier's duty to a passenger.  We determined in Wright that a condition precedent for the common carrier's duty established by case law was "notice of a specific danger just prior to the assault."  Id. at 533, 362 S.E.2d at 922.

Prior to articulating the "notice of a specific danger just prior to the assault" and "imminent probability of harm" standard, we declined to adopt a general affirmative duty to protect invitees because "acts of assaultive criminal behavior cannot reasonably be foreseen."  Id. at 531, 362 S.E.2d at 921.  Under ordinary circumstances, "it would be difficult to anticipate when, where, and how a criminal might attack."  Id.; see also A.H. v. Rockingham

4

<u>Publ'g Co.</u>, 255 Va. 216, 222, 495 S.E.2d 482, 486 (1998).  Thus, "imminent probability of harm" and "reasonably foreseeable" are interconnected concepts, and – at least in determining liability in <u>Wright</u> and subsequent cases involving the business owner-invitee relationship – the foreseeability of a particular criminal act was analyzed in terms of the business owner's knowledge that assaults "are occurring, or are about to occur . . . indicat[ing] an imminent probability of harm to an invitee."  <u>See, e.g.</u>, <u>Wright</u>, 234 Va. at 533, 362 S.E.2d at 921-22; <u>Burns</u>, 250 Va. at 43-45, 458 S.E.2d at 449-50 (assault at gas station).

Our later cases show a similar understanding.  In <u>Thompson</u>,[1] we held that the plaintiff alleged facts sufficient to show that the operator of a roller skating rink owed him a duty of care because "it [was] alleged that a specific individual was known to [that defendant] to be violent and to have committed assaults on other invitees on its property in the recent past" prior to that individual's attack the plaintiff.  <u>Id</u>. at 130, 540 S.E.2d at 128.

> While in <u>Wright</u>, and other cases, we have declined to "impose liability for negligence based solely upon . . . a background" of prior criminal activity on the defendant's premises or in its vicinity by unknown persons, here the circumstances are quite different.  Indeed, the allegations in Thompson's motion for judgment plainly state that Skate America had specific knowledge of Bateman's propensity to assault its other invitees, had intervened to inhibit that behavior in the past, and had taken steps to avoid a reoccurrence of that behavior in the future.  Thus, taking these allegations as true on

_____

[1] In <u>Thompson</u>, the plaintiff was skating at the defendant's rink when another patron assaulted him.  Thompson's motion for judgment alleged his assailant had previously caused numerous "disturbances, arguments and fights" at the rink, had been ejected and banned by the defendant from reentry on multiple occasions, and was supposedly banned from the rink at the time of the assault.  261 Va. at 124-25, 540 S.E.2d at 124-25.

demurrer, we are of opinion that the allegations as to
Bateman's presence on Skate America's premises were
sufficient to state a claim that Skate America was on
notice specifically that Thompson was in danger of being
injured by Bateman in a criminal assault. The "imminent
probability" of that harm, as characterized in Wright, is
merely a heightened degree of the "foreseeability" of that
harm and here we are of opinion that the specific
allegations concerning the knowledge Skate America had of
Bateman's prior violent conduct satisfied the necessary
degree of foreseeability.

Id. (internal citation omitted).

In a case decided the same day as Thompson, Dudas v. Glenwood Golf Club, Inc., 261 Va. 133, 540 S.E.2d 129 (2001),[2] the Court rejected the plaintiff's argument based on A.H. that "where there are prior similar criminal attacks, the issue becomes whether the plaintiff's injury was reasonably foreseeable."[3] Dudas, 261 Va. at 139, 540 S.E.2d at 132. The Court explained that its "analysis in A.H. focused on the particular special relationship and the surrounding circumstances at issue there and did not modify [the] holding in Wright concerning the potential duty of care owed by a business invitor to its invitee with regard to criminal acts committed by third parties on its premises." Id. Instead, the Court relied upon the analysis in Wright, noting, "[i]n applying that exception [to the general rule of no liability], careful

---

[2] In Dudas, the plaintiff was playing golf on the defendant's course when "two unknown male trespassers" robbed him at gunpoint. "Two armed robberies and one attempted robbery of business invitees had occurred" on the premises in the preceding month, and another robbery had occurred more than seventeen months prior to this incident. 261 Va. at 136, 540 S.E.2d at 131.
[3] In A.H., the plaintiff was assaulted while delivering papers for his employer, the defendant. The Court held the employer had no duty to protect the plaintiff from a third party's assault when the evidence showed there had been three prior assaults on the defendant's employees "in the five years preceding the assault on the plaintiff." 255 Va. at 222, 495 S.E.2d at 486.

6

analysis of particular factual patterns in subsequent cases must be used to avoid permitting the narrow exception to swallow the general rule." Id. at 139, 540 S.E.2d at 132-33. The Court stated the proper inquiry was "whether this previous criminal activity was sufficient to 'lead a reasonable person . . . to conclude that there was an imminent danger of criminal assault' to the plaintiff." Id. at 140, 540 S.E.2d at 133 (quoting Wright, 234 Va. at 533, 362 S.E.2d at 922). Accordingly, the Court concluded the prior criminal acts were insufficient to cause a "reasonable business owner to conclude that its invitees were in imminent danger of criminal assault, and there was certainly nothing to indicate that Dudas in particular was in such danger." Id. at 140, 540 S.E.2d at 133.

And, in Yuzefovsky, the Court assumed, without deciding, that the plaintiff tenant alleged facts sufficient to show a special relationship between himself and the landlord. Where that relationship is established, the Court held that the same duty of care applies to a landlord-tenant relationship as applies to business owners and their invitees. Id. at 109, 540 S.E.2d at 141 (quoting Wright, 234 Va. at 533, 362 S.E.2d at 922). In concluding that Yuzefovsky failed to establish that his landlord had a duty to protect him from the assault, the Court noted the motion for judgment did not allege "that [the landlord] knew that criminal assaults against persons were occurring, or were about to occur, on the premises that would indicate an imminent probability of harm to [the plaintiff] or another tenant." Id.

In the case at bar, the majority summarily rejects the imminent probability of harm standard consistently applied in the business

7

owner-invitee context, finding:

> [I]t is simply not applicable to the potential duty of
> care owed to a guest as a result of the special
> relationship of innkeeper and guest.  And, in the context
> of that special relationship [the relationship of
> innkeeper and guest], we equate 'notice of a specific
> danger' with the concept of a reasonably foreseeable
> danger and not with the degree of knowledge of criminal
> assaults that indicate 'an imminent probability' of harm.
> See Skate America, 261 Va. at 130, 540 S.E.2d at 129
> ("imminent probability" of harm is a heightened degree of
> foreseeability).

Taboada v. Daly Seven, 271 Va. 313, 327, 626 S.E.2d 428, 435 (2006).
The majority's rationale for doing so is its conclusion that
"[g]iven the nature of the special relationship between an innkeeper
and a guest, we hold that it imposes on the innkeeper the same
potential elevated duty of 'utmost care and diligence' to . . .
protect the guest against reasonably foreseeable injury from the
criminal conduct of a third party" as that of a common carrier to
its passenger.  Id. at 326-27, 626 S.E.2d at 434-35.  I do not
believe our jurisprudence regarding common carrier liability
supports the majority's conclusion.

Although the common carrier cases do not use the exact
"imminent probability of harm" language from Wright, those cases
reflect a narrow application of when the criminal conduct of a third
party is reasonably foreseeable so as to trigger a duty on behalf of

the carrier.  Immediately before enunciating the "imminent probability of harm" standard in Wright, the Court reviewed the common carrier cases upon which the majority now relies.  We found no broad "foreseeability" standard because "[i]mplicit in . . . common carrier cases is the element of notice of a specific danger just prior to the assault."  Wright, 234 Va. at 533, 362 S.E.2d at 922.  That standard has not changed in the twenty years since Wright and cannot now be ignored to create a broad "reasonably foreseeable" standard, as the majority posits.  As the following analysis of the common carrier cases shows, a "reasonably foreseeable" standard has always been read in the context of whether a "specific danger just prior to the assault" was known to the defendant carrier.  "[I]mminent probability of harm" in Wright was simply another way of expressing the standard of "specific danger just prior to the assault" from the common carrier cases.

For example, in Connell v. Chesapeake & Ohio Ry. Co., 93 Va. 44, 24 S.E. 467 (1896), the Court held the circuit court did not err in sustaining the defendants' demurrer to a motion for judgment alleging they were negligent in failing to protect a passenger from being assaulted and killed by a third party while on the train.  Id. at 53-55, 24 S.E. at 467-68.  The Court noted that the plaintiff did not allege that the defendants "knew that any danger impended over the [victim], or that there was any circumstance to arouse their suspicion" prior to the assault.  Id. at 56, 24 S.E. at 468.  Furthermore, the Court stated that the defendants could not have been required to anticipate such an event because such a requirement would "require of [the defendants] more than human foresight as to

9

the minds and motives of men, and make them indeed insurers of the safety of passengers, while under their care, against all dangers, however remotely connected with their acts of omission or commission." Id. at 59, 24 S.E. at 469. Accordingly, in finding no error in the circuit court's dismissal of the claim, the Court declared that common carriers

> should be held responsible to a passenger for injuries received at the hands of an intruder, a stranger, or a fellow-passenger only in those cases where its agents or employees knew, or, in light of surrounding circumstances, ought to have known, that danger was threatened, or to be apprehended, and then failed to use their authority and power to protect him from the impending peril.

Id. at 62-63, 24 S.E. at 470-71 (emphasis added).

The Court found that a common carrier failed to fulfill this duty in Hines v. Garrett, 131 Va. 125, 108 S.E. 690 (1921). There, the Court held that the circuit court did not err in finding the defendant liable for damages suffered by the plaintiff when she was raped after being "required to leave the defendant's train in a dangerous and unprotected place." Id. at 129, 108 S.E. at 691. "[B]earing in mind the high degree of care due by a carrier to its passengers," the Court concluded the jury could have found that the assault upon the plaintiff was "proximately caused by her wrongful ejection from the train." Id. at 136-37, 108 S.E. at 693-94. The Court observed that the carrier "is bound to know the character of the place at which it wrongfully discharge[d]" its passengers, and

the evidence showed the location to be "infested by worthless, irresponsible and questionable characters known as tramps and hoboes." Id. at 138-39, 108 S.E. at 694. The common carrier was liable not because it breached a duty of foreseeability as to the passenger's safety within the train itself or elsewhere on the carrier's property, but because the carrier committed an affirmative act of negligence in discharging the plaintiff from the train.

In Norfolk & W. R. Co. v. Birchfield, 105 Va. 809, 54 S.E. 879 (1906), an agent of the defendant was present at the time a third party assaulted the plaintiff inside a railroad car, yet the agent failed to take adequate measures to protect the plaintiff from the third party. Id. at 819-21, 54 S.E. at 883-84. The Court observed the evidence showed "that the conductor must have heard the altercation, and that it was of a character that should have warned him that it was his duty to interpose" in order to fulfill its duty to "carry safely those whom they take into their coaches in so far as human care and foresight can provide." Id. at 821, 54 S.E. at 883.

In contrast, in Virginia R. & Power Co. v. McDemmick, 117 Va. 862, 86 S.E. 744 (1915), the Court held that the circuit court erred in refusing a jury instruction that would have required the jury to find for the defendant if the attack upon the plaintiff by a third party was "unexpected and inflicted at a time when the servants of the defendant were unable to protect him." Id. at 866-68, 86 S.E. at 746. The Court reviewed the general proposition that common carriers are not "insurer[s] of their [passengers'] safety," although they are "held to the highest degree of care and diligence

11

in guarding their safety." Id. at 869, 86 S.E. at 747. The Court reviewed the evidence and noted that it did not "appear that prior to [the assault] the conduct or bearing of the [third party], though insolent and very disagreeable, could reasonably have been regarded as menacing the safety of the passengers on the car." Id. at 867, 86 S.E. at 746. Thus, the jury "might have believed from the evidence that the injury to the plaintiff was unexpected," which would require them to find for the defendant. Accordingly, the Court held the circuit court erred in denying the instruction. Id. at 871, 86 S.E. at 747.

In each of these cases, the defendants' knowledge of a specific danger of impending peril determined whether they owed a duty of care to the plaintiffs. Connell, Birchfield, and McDemmick all support the conclusion in Wright that the proper standard to measure the duty owed by a common carrier to a passenger is contingent upon notice of a "specific danger just prior to the assault." Wright, 234 Va. at 533, 362 S.E.2d at 922. Consequently, the majority's reliance on the common carrier cases to establish an unconditional "reasonably foreseeable" standard to measure the duty of care owed by an innkeeper is not supported by the standard applied to carriers. Accordingly, I believe the majority errs in imposing a standard of foreseeability to measure the duty of an innkeeper that is inconsistent with the duty we have applied to a common carrier. Those cases, as we concluded in Wright, read foreseeability as requiring notice of a "specific danger just prior to the assault," which is equivalently stated as requiring knowledge of an "imminent probability of harm."

12

The majority does not argue that if the standard for duty of care articulated in <u>Wright</u> is applied in this case, the circuit court incorrectly ruled on the demurrer.  To the contrary, it is readily evident that under a standard requiring an innkeeper to have "notice of a specific danger just prior to the assault" so that "an imminent probability of harm to an invitee" is known, Taboada has failed to plead facts sufficient to meet that standard.  The circuit court's judgment is thus not erroneous when reviewed in the context of the standard under <u>Wright</u>, which should be the applicable standard in this case for the reasons outlined above.

Even if the majority were correct in deriving the standard of care from the common carrier cases it now applies to Daly Seven, the application of that standard under the circumstances of this case is not supported by our precedent.  This is so, in part, because no common carrier case, the majority's foundation for innkeeper liability, has imposed an elevated duty upon the carrier outside the confines of its vehicle or property in an area generally accessible to the public.  While the innkeeper-guest relationship may be analogous in some circumstances to a common carrier-passenger relationship when the guest is in his or her room, it is inapposite for determining the duty of care owed a guest in other areas of an inn readily accessible by the public, such as Daly Seven's outside parking lot.

The majority correctly recites from <u>Birchfield</u> and <u>Connell</u> our prior language that a common carrier owed its passengers a duty of "utmost care and diligence."  In imposing an equivalent duty upon an innkeeper, however, the majority neglects to put the discussion in

13

the context in which it occurred in the common carrier cases.  The context makes an important and substantial difference because the elevated duty ascribed to the common carrier is uniformly restricted to "those whom [the carriers] take into their coaches."  Birchfield, 105 Va. at 821, 54 S.E. at 883; Connell, 93 Va. at 55, 24 S.E. at 468.[4]

As noted above, in all but one of the cases analyzing liability for the criminal acts of a third party within the context of a common carrier-passenger relationship, the alleged criminal act occurred within the confined area of the carrier's vessel, an area not accessible to the public.  Only in Hines did an attack occur outside of the train car and engender liability on the part of the common carrier.  However, as described earlier, Hines is clearly distinguishable from the other common carrier cases and the case at bar because it involved an affirmative act by the defendant to expose the plaintiff to criminal assault by discharging the plaintiff from the train.  As we noted in Wright, the carrier's "affirmative act of negligence in ejecting the passenger at a dangerous place" distinguishes Hines, so it is inapplicable in the context of the other common carrier cases.  Wright, 234 Va. at 532, 362 S.E.2d at 922.

_____

[4] Although not a common carrier case, Crosswhite v. Shelby Operating Corp., 182 Va. 713, 30 S.E.2d 673 (1944), is cited by the majority, but does not support the majority's conclusion.  In fact, Crosswhite is consistent with the limitation of the common carrier's duty to "those whom they take into their coaches," Birchfield, 105 Va. at 821, 54 S.E. at 883; Connell, 93 Va. at 55, 24 S.E. at 468, because the negligent act alleged in Crosswhite was within the guest's room.  Id. at 714–16, 30 S.E.2d at 673–74.  Thus, in areas accessible to the general public, the more analogous relationship for determining an innkeeper's duty is not that of a common carrier

14

Thus, the common carrier cases upon which the majority relies to fashion its rule of liability only find a duty on the part of the common carrier for criminal acts of a third party within the confines of the carrier: an area only accessible to the passenger and not to the public. No case imposes a duty on the carrier and resulting liability for breach where the plaintiff passenger is, for example, in the parking lot of a train station, at a bus station, or an airport concourse. These areas, like the outdoor premises in a hotel parking lot, are accessible by guests and the public and are not areas where our common law has found an elevated duty on behalf of the defendant common carrier to warn or protect the passenger or guest from third party assaults.[5]

The majority's failure to apply the appropriate standard and to recognize the limitation of duty in publicly accessible areas also produces an inequitable and unjustifiable paradox. Comparing the facts and outcomes in <u>Wright</u> and the case at bar readily reveals this conundrum.

For example, assume Individual A parks her car in a hotel parking lot, steps inside the hotel to ask directions, and returns to her car, where she is assaulted by a third party. Individual B parks his car in the hotel parking lot space next to Individual A, checks into the hotel at the same time, and returns to his car to get luggage, where he is assaulted by the same third party who is attacking Individual A. Assuming the same factual allegations as

and passenger, but that of the business owner and invitee.
    [5] A common carrier may indeed be liable in such circumstances if the facts so warrant, but under the standard set out in <u>Wright</u>, not the unrestricted foreseeability standard posited by the

15

Taboada makes here, under the analysis adopted in <u>Wright</u> and by the majority, the hotel may be liable to Individual B, but not Individual A although assaulted by the same perpetrator at the same time and place.

Similarly, if a hotel, conference center, grocery store, and service station operate within close proximity of each other with adjoining parking lots and identical histories of criminal conduct on their premises, distinctly different results arise under the majority's analysis. A guest assaulted at the hotel could have a cause of action against the hotel, but no cause of action would lie against the owners of the other facilities for similar acts by the same assailant at the same time.

The majority's standard for foreseeability appears to make the innkeeper a de facto insurer of his guest's safety and thereby imposes a standard above that placed on a common carrier in a similar context. In some respects, the innkeeper now has a higher degree of liability than a common carrier because the innkeeper is liable for assault in its outside parking area where no common carrier has been held to a similar standard.

In conclusion, I believe the majority is in error because the common carrier cases do not support the standard that it now applies to innkeepers. Furthermore, even if the majority's standard were appropriate, it has not been applied to a common carrier for acts outside the carrier's vessel in areas accessible to the public, such as Daly Seven's outside parking lot. For these reasons, I find our jurisprudence does not support the conclusion that Daly Seven had a

majority.                                    16

duty to protect Taboada from Smith's attack.  Therefore, I respectfully dissent and would affirm the circuit court's judgment as to Taboada's claims under Code § 35.1-28 and the common law.

This order shall be published in the Virginia Reports and shall be certified to the Circuit Court of the City of Roanoke.

A Copy,

Teste:

Patricia L. Harrington, Clerk

17